Filed 1/13/17

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| LETICIA BARENO, | D069381 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2014-00003862-CU-OE-CTL) |
| SAN DIEGO COMMUNITY COLLEGE DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard E.L. Strauss, Judge. Reversed.

Valencia & Cywinska, Mark Joseph Valencia and Izabela Cywinska Valencia for Plaintiff and Appellant.

Artiano Shinoff, Ray J. Artiano, Jack M. Sleeth, Jr. and Paul V. Carelli IV for Defendant and Respondent.

I.

INTRODUCTION

Plaintiff Leticia Bareno appeals from a judgment entered in favor of defendants San Diego Miramar College (the College), San Diego Community College District, and San Diego Community College District Administrative Facilities Corporation.[1]

In early 2013, Bareno was disciplined by her employer, the College, in relation to her employment as an administrative assistant. Thereafter, Bareno required medical treatment and accompanying leave from work, and she requested medical leave from her supervisor. Bareno provided medical certification for this request for leave. After the time frame specified in Bareno's initial request for leave had ended, Bareno continued to be absent from work. Bareno had attempted to e-mail her supervisor a recertification of her need for additional medical leave, but the College claimed that Bareno's supervisor did not receive any such request from Bareno for additional leave. As a result, after Bareno continued to be absent from work for an additional five consecutive days, the College took the position that she had "voluntarily resigned." After Bareno learned that the College considered her to have voluntarily resigned as a result of her continued absence from work, Bareno attempted to provide the College with information regarding the medical necessity of the leave that she had taken. The College refused to reconsider its position.

---

[1]     We will refer to all three defendants jointly as "SDCCD."

2

Bareno filed suit against all three defendants, alleging that in effectively terminating her employment, SDCCD retaliated against her for taking medical leave, in violation of Government Code section 12945.2, the Moore-Brown-Roberti Family Rights Act, commonly referred to as the California Family Rights Act (CFRA). (See Cal. Code Regs., tit. 2, § 11087, subd. (b).)[2] SDCCD moved for summary judgment on Bareno's sole claim for retaliation under CFRA, and the trial court granted the motion.

On appeal, Bareno contends that the trial court erred in granting summary judgment on her CFRA retaliation claim because there remain triable issues of material fact in dispute. We agree. Because there remain material issues in dispute and the record is capable of supporting a judgment in favor of Bareno, the trial court erred in granting summary judgment in favor of SDCCD. We therefore reverse the judgment and remand the matter for further proceedings.

---

[2]  CFRA is California's counterpart to the federal Family and Medical Leave Act of 1993 (FMLA) (29 U.S.C. §§ 2601-2654). (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 913, 919 (*Richey*).) "California courts routinely rely on federal cases interpreting the FMLA when reviewing the CFRA. (*Neisendorf* [*v. Levi Strauss & Co.* (2006) 143 Cal.App.4th 509,] 514, fn. 1.)" (*Rogers v. County of Los Angeles* (2011) 198 Cal.App.4th 480, 487 (*Rogers*); see Cal. Code Regs., tit. 2, § 11096 [incorporating by reference federal FMLA regulations to "the extent that they are within the scope of Government Code section 12945.2 and not inconsistent with [the regulations implementing the CFRA], other state law, or the California Constitution"].)

3

II.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual background*

Bareno began working as a Student Services Assistant for the College in March 1999. In 2000, Bareno was promoted to Senior Secretary at the School of Business, Technical Careers and Workforce Development.

In 2006, the College suspended Bareno for a two-week period and recommended that her employment be terminated. However, rather than terminate Bareno's employment, the College entered into a "Last Chance Agreement" (Agreement) with Bareno. The Agreement indicated that the College agreed to postpone its termination recommendation to the Board of Trustees in exchange for Bareno following specified terms and conditions of her employment, as set forth in the Agreement. Among other things, Bareno agreed to maintain regular and predictable attendance and to comply with the College's policies and procedures for reporting absences. The Agreement was in effect for 18 months, and expired in May 2008.

The record reveals no additional issues documented in Bareno's personnel file until 2012. In May 2012, Dean Lynne Ornelas, Bareno's supervisor, issued Bareno a "counseling conference letter" to memorialize an oral discussion between the two regarding Bareno's "excessive absences" and "disagreements . . . over the Fall 2012 Schedule." In August 2012, Ornelas issued Bareno a written reprimand, citing a number of problems with Bareno's work, including absences without reasonable cause, incompetence, inefficiency, and neglect of duty.

4

In January 2013, Ornelas prepared a written recommendation that Bareno be suspended for performance issues similar to those noted in the written reprimand from August 2012. On February 14, 2013, the College held a predisciplinary meeting with Bareno to discuss the problems that Ornelas had identified. On February 19, the College disciplined Bareno with a three-day suspension from work with no pay. The suspension was set to run from Wednesday, February 20 through Friday, February 22, 2013.

According to Bareno, on Monday, February 25, 2013, she called Ornelas at 4:30 a.m. and told Ornelas that she would not be at work because she needed to seek medical attention. Bareno indicated that she was sick, depressed, stressed, and had to go to the hospital. Later that evening, Bareno e-mailed Ornelas to say that she would be out on medical leave through March 1, 2013, and stated that she would contact Ornelas "sometime on Friday[, March 1] to inform you of the date of my return to work."

The following day, February 26, Ornelas responded to Bareno's e-mail, and copied the College's Vice President, Jerry Buckley, informing Bareno that before she could return to work, she would have to provide a physician's statement "on either the District's station[e]ry, or on the physician's official station[e]ry."

On February 27, Bareno responded to Ornelas's e-mail with an e-mail stating, "Thank you for the information." The same day, Bareno e-mailed Ornelas a copy of a "Work Status Report" from Kaiser Permanente indicating that Bareno had a medical need to take leave from work from February 25, 2013 through March 1, 2013. The

5

document identified the onset of the condition as February 25, 2013, and indicated that Bareno's next appointment with a medical provider would take place on March 1, 2013.[3]  There is no indication in the record that anyone at the College regarded this document as insufficient certification to support Bareno's request for medical leave during the period between February 25 and March 1, 2013.

On Friday, March 1, 2013, Bareno e-mailed Buckley regarding her desire to appeal the three-day suspension.  Bareno also indicated in her e-mail to Buckley that she was "out on a . . . medical leave" and would "notify all concern[ed] of [her] return."

Also on March 1, Bareno went to a UPS Store where she utilized the UPS Store's e-mail system to e-mail Ornelas a copy of a new "Work Status Report" from Kaiser Permanente indicating that Bareno required leave from work for a medical reason during the period of time between March 1, 2013 and March 8, 2013.[4] Specifically, the report, which appears on a Kaiser Permanente form, indicated that it had been prepared by Dr. Evan George Tzakis, M.D.  The form identified Bareno as the subject of the order based on an "[e]ncounter" with her on March 1, 2013 at

_____

[3]     Specifically, the report, which appears on a Kaiser Permanente form, indicated that it had been prepared by Kristen Tracy Lennon (MFT).  The form identified Bareno as the subject of the order based on an "[e]ncounter" with her on February 25, 2013 at 2:00 p.m.  The form included the title "Work Status Report" and indicated the date of "onset of condition" as "2/25/2013."  The form also stated, "Off Work.  [¶] This patient is placed off work from 2/25/2013 through 3/1/2013."  (Underscore omitted.)

[4]     A copy of the e-mail in the record shows that it was sent from "store0571@theupsstore.com" and was sent to Ornelas's work e-mail address and Bareno's personal e-mail address.  The e-mail was sent at 4:28 p.m.

1:00 p.m. The form included the title "Work Status Report" and indicated the date of "onset of condition" as "2/25/2013." The form also stated, "Off Work. [¶] This patient is placed off work from 3/1/2013 through 3/8/2013." (Underscore omitted.) This "Work Status Report" is in the same format as, and includes similar information to, the "Work Status Report" that Bareno had submitted to Ornelas on February 27.

According to Ornelas, she did not receive Bareno's March 1 e-mail.

Bareno did not appear for work on Monday, March 4. That day, Ornelas contacted the human resources office for the College and informed someone there "of [Bareno's] absence without any contact" for that day. Ornelas forwarded Bareno's February 25 medical request, as well. On March 6, Robin Lewison e-mailed Ornelas and Buckley, informing them that five consecutive days of unauthorized absences would constitute an abandonment of an employee's position under the collective bargaining agreement governing Bareno's employment.

Bareno did not report to work for the rest of the week of March 4, 2013. Bareno testified that sometime during the time period between March 1 and March 8, she received a call "from one of [her] coworkers, but [she] just could not discuss anything," and so she "did not speak to anybody."[5] According to Bareno, her coworker left a message and said that she was " 'checking up on [Bareno].' "[6] Bareno

---

[5] The coworker was identified as an administrative assistant to Buckley.

[6] There is no indication in the record that the person who called Bareno informed Bareno that she was being considered absent without authorization at that point in time, or that the individual was calling on behalf of the College to inquire of Bareno whether she continued to need leave for medical reasons.

did not return the telephone call. Bareno did not call anyone at the College during those five days.

On Friday, March 8, 2013, Will Surbrook, Vice Chancellor of Human Resources, sent a letter to Bareno via certified mail to inform her that her unauthorized absences constituted a voluntary resignation, effective March 11, 2013.[7] The letter indicated that Bareno had a right to request a meeting with her supervisor, within five days of the proof of mailing of the notice, if she believed the proposed action was incorrect. The record does not contain information as to when the letter was delivered to Bareno's home address that was on file with the College.

Also on March 8, Peter Alvino engaged in an e-mail exchange with Ornelas regarding Bareno's absences. Alvino said to Ornelas, "Good question. As you know, her leave is only approved through March 1st. However, as you may also know, she may request from her physician an extension from March 4th and forward."[8]

The following day, Saturday, March 9, Bareno e-mailed Ornelas another "Work Status Report" from Kaiser Permanente that authorized her leave from work for the period between March 8, 2013 and March 15, 2013. The "Work Status Report" identified February 25, 2013, as the date of onset of the condition for which Bareno

---

[7]  The letter was sent to Bareno at the address the college had on file for her. The letter also indicates that it was delivered via "HOME DELIVERY," although it is unclear to what method of delivery this phrase refers. There is no other indication in the record that a copy of the letter was delivered to Bareno's residence.

[8]  The record does not disclose Alvino's position at the College, although Bareno identifies him as "the Director of Employee Relations," and it also does not reveal the question posed by Ornelas to which Alvino responded, "Good question."

required continued leave from work. In this e-mail, Bareno also informed Ornelas that she intended to return to work on April 8, 2013.

On the morning of Monday, March 11, 2013, Ornelas e-mailed Robin Lewison in the College's Human Resource Department, Buckley, and Alvino to inform them of the March 9 e-mail Bareno had sent her. Ornelas asked, "Can I require a medical verification for all days missed since her suspension?" Lewison's response did not directly answer Ornelas's question, but instead quoted a portion of the collective bargaining agreement governing Bareno's employment regarding the provision stating that absence from duty without authorized leave for five days constitutes a voluntary resignation, and indicating to Ornelas that she should not contact Bareno, but should instead wait to see whether Bareno would request a meeting with her supervisor pursuant to the collective bargaining agreement.

On Wednesday, March 13, 2013, Bareno again e-mailed Ornelas medical leave notices from Kaiser Permanente for the period between March 8 and March 15, 2013, as well as an SDCCD form used to request a formal leave of absence. Ornelas forwarded Bareno's e-mail to Lewison, who responded, "Our position remains the same in that we wait for the unit member to contact you, Lynne, to request a meeting."

On Monday, March 18, Bareno faxed to Ornelas her SDCCD form seeking a formal leave of absence, as well as Kaiser Permanente "Work Status Reports" indicating the need for leave between March 8 and March 19, 2013. That same day, Bareno, who had been seeking medical treatment in Riverside County during these events, traveled to San Diego to retrieve mail from her post office box. On this date,

9

Bareno finally received Surbrook's March 8, 2013 letter informing her of her "voluntary resignation."[9] Bareno immediately telephoned Surbrook, who "told [Bareno] bluntly that he could no longer talk to [her] because [she] was no longer an employee for the District." That day, Surbrook sent Bareno another letter via certified mail and "HOME DELIVERY," in which he referenced the College's March 8 letter informing Bareno that her five days of "unauthorized absence[s] constituted abandonment of position." Surbrook's letter also stated that Bareno had possessed the right to meet with her supervisor if she had made the request within five working days of proof of the mailing of the prior notice, but that since she had not made such a request, her "voluntary resignation" was effective as of March 11, 2013.

On Wednesday, March 20, 2013, Bareno received Surbrook's March 18, 2013 letter. On Monday, March 25, 2013, Bareno drove to the school and scheduled an appointment to speak with Chancellor Constance Carroll. Thereafter, Surbrook called Bareno and agreed to schedule a meeting with her and Alvino.

Bareno met with Alvino on April 3. She provided him with copies of all of her documentation from Kaiser Permanente and reiterated her position that she had been on medical leave from February 25th forward, and that she had not voluntarily resigned. Bareno also mailed, via certified mail, copies of her medical documents to both Lewison and Alvino on April 5. These documents included the Kaiser Permanente "Work Status Report" indicating that a doctor had placed Bareno on

---

[9]     Bareno states in her declaration that this letter was neither delivered to her home, nor personally served on her.

medical leave from work between March 1 and March 8, 2013—i.e., during the disputed time period.

More than ten days later, on Tuesday, April 16, 2013, Alvino mailed Bareno a letter informing her that his "office received your recent documents," but had ultimately concluded that "[n]one of the documents mailed to us supports your claim that you requested a leave of absence for the dates in question and that you had contacted your supervisor." Alvino's letter further stated that the College continued to "accept[ ] [Bareno's] voluntary resignation." Bareno apparently received this letter on the same day it was sent.

Three days later, April 19, 2013, Bareno mailed another package to Alvino. This package included a copy of the "Work Status Report" indicating Bareno's need to be off of work between March 1 and March 8 for medical reasons, as well as a copy of the e-mail sent to Ornelas from the UPS Store in which Bareno had attached this "Work Status Report." During a telephone call, Alvino told Bareno that he would review the materials and would discuss the issue with "the Committee." Bareno did not hear from Alvino after that point in time.

B. *Procedural background*

Bareno filed a complaint against SDCCD on February 21, 2014, alleging one cause of action for retaliation in violation of CFRA. SDCCD moved for summary judgment, which the trial court granted on October 9, 2015. The court then entered judgment in favor of SDCCD on October 27. Bareno filed a timely notice of appeal.

11

III.

DISCUSSION

A. *Applicable legal standards*

   1. *Summary judgment standards*

"Summary judgment is granted when a moving party establishes the right to the entry of judgment as a matter of law. [Citation.] On appeal, the reviewing court makes ' "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." ' " (*Hesperia Citizens for Responsible Development v. City of Hesperia* (2007) 151 Cal.App.4th 653, 658.)

In independently examining the record on appeal "to determine whether triable issues of material fact exist," we " 'consider[ ] all the evidence set forth in the moving and opposition papers except that to which objections were made and sustained.' " (*Ambriz v. Kelegian* (2007) 146 Cal.App.4th 1519, 1530 (*Ambriz*).) Further, " 'we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [the plaintiff's] evidentiary submission while strictly scrutinizing the defendants' own showing, and *resolving any evidentiary doubts or ambiguities in plaintiff's favor*.' " (*Ibid.*, italics added.)

" 'In the summary judgment context, . . . the evidence *must be incapable of supporting a judgment for the losing party* in order to validate the summary judgment.' " (*Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864,

877 (*Faust*), italics added.) " 'Thus even though it may appear that a trial court took a "reasonable" view of the evidence, a summary judgment cannot properly be affirmed unless a contrary view would be *unreasonable as a matter of law* in the circumstances presented.' " (*Ibid.*, italics added.)

2. *Overview of CFRA*

In 1991, the Legislature enacted CFRA (Gov. Code,[10] § 12945.2). CFRA "is intended to give employees an opportunity to take leave from work for certain personal or family medical reasons without jeopardizing job security." (*Nelson v. United Technologies* (1999) 74 Cal.App.4th 597, 606 (*Nelson*).)

Generally, CFRA makes it an unlawful employment practice for an employer of 50 or more persons to refuse to grant a request by an employee to take up to 12 workweeks in any 12-month period for family care and medical leave. (§ 12945.2, subds. (a), (c)(2)(A).) "CFRA has two principal components: a right to leave of up to 12 weeks in any 12-month period to care for a family member or for the employee's own medical condition (Gov. Code, § 12945.2, subds. (a), (c)(2)(A)), and a right to reinstatement in the same, or a comparable, position at the end of the leave. (Gov. Code, § 12945.2, subd. (a).)" (*Richey*, *supra*, 60 Cal.4th at p. 919.)

"Violations of . . . CFRA generally fall into two types of claims: (1) 'interference' claims in which an employee alleges that an employer denied or interfered with her substantive rights to protected medical leave, and (2) 'retaliation'

---

[10]    Further statutory references are to the Government Code unless otherwise indicated.

claims in which an employee alleges that she suffered an adverse employment action for exercising her right to CFRA leave." (*Rogers*, *supra*, 198 Cal.App.4th at pp. 487-488.)[11]

Further, in order to ensure that employees are aware of their rights under CFRA, employers who are subject to CFRA are required to provide notice to their employees of the right to request CFRA leave. (Cal. Code Regs., tit. 2, § 11095, subd. (a); see also Cal. Code Regs., tit. 2, § 11091, subd. (a)(5).) The text of the minimum notice requirements is set forth at California Code of Regulations, title 2, section 11095, subdivision (d).[12] Failure of the employer to give or post the required notice

---

[11] The statutory authority for an "interference" claim arises from section 12945.2, subdivision (t), which makes it unlawful for an employer "to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right" provided by CFRA. The statutory authority for a "retaliation" claim arises from section 12945.2, subdivision (*l*)(1), which makes it unlawful to retaliate against any individual because of his or her exercise of the right to family care or medical leave as provided by CFRA.

[12] The minimum notice requirements are as follows, in relevant part:

> "FAMILY CARE AND MEDICAL LEAVE (CFRA LEAVE)
> AND PREGNANCY DISABILITY LEAVE
>
> "Under the California Family Rights Act of 1993 (CFRA), if you have more than 12 months of service with us and have worked at least 1,250 hours in the 12-month period before the date you want to begin your leave, you may have a right to a family care or medical leave (CFRA leave). This leave may be up to 12 workweeks in a 12-month period for the birth, adoption, or foster care placement of your child or for your own serious health condition or that of your child, parent or spouse. While the law provides only unpaid leave, employees may choose or employers may require use of accrued paid leave while taking CFRA leave under certain circumstances.

14

regarding an employee's right to request CFRA leave precludes an employer "from taking any adverse action against the employee, including denying CFRA leave, for failing to furnish the employer with advance notice of a need to take CFRA leave." (Cal. Code Regs., tit. 2, § 11091, subd. (a)(5).)

"Even if you are not eligible for CFRA leave, if you are disabled by pregnancy, childbirth or a related medical condition, you are entitled to take a pregnancy disability leave of up to four months, depending on your period(s) of actual disability. If you are CFRA-eligible, you have certain rights to take BOTH a pregnancy disability leave and a CFRA leave for reason of the birth of your child. Both leaves contain a guarantee of reinstatement –for pregnancy disability it is to the same position and for CFRA it is to the same or a comparable position –at the end of the leave, subject to any defense allowed under the law.

"If possible, you must provide at least 30 days' advance notice for foreseeable events (such as the expected birth of a child or a planned medical treatment for yourself or of a family member). *For events that are unforeseeable, we need you to notify us, at least verbally, as soon as you learn of the need for the leave.* Failure to comply with these notice rules is grounds for, and may result in, deferral of the requested leave until you comply with this notice policy.

"We may require certification from your health care provider before allowing you a leave for pregnancy disability or for your own serious health condition. We also may require certification from the health care provider of your child, parent or spouse, who has a serious health condition, before allowing you a leave to take care of that family member. When medically necessary, leave may be taken on an intermittent or reduced work schedule." (Cal. Code Regs., tit. 2, § 11095, subd. (d).)

15

It is generally an unlawful business practice "for a covered employer to refuse to grant, upon reasonable request, a CFRA leave to an eligible employee." (Cal. Code Regs., tit. 2, § 11088, subd. (a).)[13]

### 3. *The legal framework for considering retaliation claims under CFRA in the summary judgment context*

The elements of a cause of action for retaliation in violation of CFRA are: " '(1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA [leave]; (3) the plaintiff exercised her right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as termination, fine, or suspension, because of her exercise of her right to CFRA [leave].' " (*Faust*, *supra*, 150 Cal.App.4th at p. 885.)  Like claims for discrimination, CFRA retaliation claims, such as the one Bareno asserts here, are subject to the *McDonnell Douglas* burden-shifting analysis. (*Loggins v. Kaiser Permanente Internat*. (2007) 151 Cal.App.4th 1102, 1108-1109 (*Loggins*).

In order to establish a prima facie case for retaliation as required by the first prong of the *McDonnell Douglas* burden-shifting analysis, an employee must show: "(1) he or she engaged in a 'protected activity[ ]' [such as taking leave for a CFRA-protected purpose,] (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz v. L'Oreal USA, Inc*. (2005) 36 Cal.4th 1028, 1042.)  "If

---

13  There exists a permissible limitation on the amount of total CFRA leave available to parents who work for the same employer for the purpose of adoption, birth, or foster care placement.  (Cal. Code Regs., tit. 2, § 11088, subd. (c).)

the employee successfully establishes these elements and thereby shows a prima facie case exists, the burden shifts to the employer to provide evidence that there was a legitimate, nonretaliatory reason for the adverse employment action." (*Loggins*, *supra*, 151 Cal.App.4th at p. 1109.) If the employer satisfies this prong by producing evidence demonstrating the existence of "a legitimate reason for the adverse employment action, 'the presumption of retaliation " ' "drops out of the picture," ' " ' [citation], and the burden shifts back to the employee to provide 'substantial responsive evidence' that the employer's proffered reasons were untrue or pretextual." (*Ibid.*)

In applying the *McDonnell Douglas* test in the context of a summary judgment motion, however, " '[w]e must keep in mind that the *McDonnell Douglas* test was originally developed for use at trial [citation], not in summary judgment proceedings.' " (*Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 343-344 (*Arteaga*).)

> " ' "In such pretrial [motion] proceedings, the trial court will be called upon to decide if the plaintiff has met his or her burden of establishing a prima facie case of unlawful [retaliation]. If the employer presents admissible evidence either that one or more of plaintiff's prima facie elements is lacking, or that the adverse employment action was based on legitimate, non[retaliatory] factors, the employer will be entitled to summary judgment *unless the plaintiff produces admissible evidence which raises a triable issue of fact material to the defendant's showing*. In short, by applying *McDonnell Douglas*'s shifting burdens of production in the context of a motion for summary judgment, 'the judge [will] determine whether the litigants have created an issue of fact to be decided by the jury.' " . . . Thus, " '[a]lthough the burden of proof in a [retaliation] action claiming an unjustifiable [termination] ultimately rests with the plaintiff . . . , in the case of a motion for summary judgment or summary issue adjudication, the burden rests with the moving party to negate the plaintiff's right to prevail

17

on a particular issue. . . .  In other words, the burden is reversed in the case of a summary issue adjudication or summary judgment motion.' " ' " (*Id.* at p. 344.)

" 'Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors.  These include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case.' " (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 362.)  We therefore reiterate:  "[M]any employment cases present issues of intent, . . . motive, and hostile working environment, issues not determinable on paper.  Such cases . . . *are rarely appropriate for disposition on summary judgmen*t, however liberalized [summary judgment standards may] be." (*Nazir v. United Airlines, Inc*. (2009) 178 Cal.App.4th 243, 286, italics added.)

B.  *Analysis*

According to SDCCD, Bareno's CFRA retaliation claim fails because the undisputed evidence demonstrates that she cannot satisfy the third element of her claim—i.e., she cannot show that she " 'exercised her right to take leave for a qualifying CFRA purpose.' " (*Faust*, *supra*, 150 Cal.App.4th at p. 885.)  As SDCCD notes, the trial court determined that Bareno could not establish her prima facie case on summary judgment for two reasons:  (1) "she did not show [that] she requested leave from the College," and (2) "even if she did request the leave for March 4-8 via the UPS email, the doctor's note she offered did not meet the requirements of the CFRA to constitute a 'reasonable request.' "  SDCCD contends that the trial court's reasons were correct and support judgment in its favor.

18

SDCCD also argues on appeal that Bareno's CFRA retaliation claim fails because the undisputed evidence demonstrates that she cannot satisfy the fourth element of her claim—i.e., she cannot show that she suffered an adverse employment action because she exercised her right to take CFRA leave. (*Faust*, *supra*, 150 Cal.App.4th at p. 885.)

Our review of the record leads us to conclude that SDCCD was not entitled to summary judgment on these grounds. We must therefore reverse the trial court's order granting judgment in favor of SDCCD.

1. *There are material issues in dispute regarding whether Bareno sufficiently and timely requested leave for a CFRA-protected reason*

SDCCD asserts that the trial court correctly concluded that SDCCD was entitled to judgment on Bareno's CFRA retaliation cause of action because Bareno "did not properly notify the College that she was taking medical leave." (Formatting omitted.) Alternatively, SDCCD contends that Bareno did not exercise her right to CFRA leave for the period between March 4 and March 8, 2013 because the "medical documentation" (formatting omitted) that she provided to SDCCD was "inadequate." (Formatting omitted.) The record does not support the conclusion that SDCCD is entitled to judgment as a matter of law with respect to either contention. Rather, the evidence, when viewed in the light most favorable to Bareno, demonstrates that she did provide sufficient notice of her need for CFRA-protected leave.

19

a. *Additional relevant legal standards*

CFRA does not itself define what constitutes a valid "request" for CFRA leave. Instead, the Legislature expressly delegated to the Fair Employment and Housing Commission (the Commission) the task of "adopt[ing] a regulation specifying the elements of a reasonable request" for CFRA leave. (§ 12945.2, subd. (a).) CFRA does require that if an "employee's need for a leave pursuant to this section is *foreseeable*, the employee shall provide the employer with reasonable advance notice of the need for the leave." (§ 12945.2, subd. (h), italics added.) CFRA is silent with respect to how an employee may request leave for a CFRA-protected purpose that is not foreseeable.[14]

The regulation adopted by the Commission regarding requests for leave provides in relevant part that, to request CFRA leave, "[a]n employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs CFRA leave, and the anticipated timing and duration of the leave. The employee need not expressly assert rights under CFRA or FMLA, or even mention CFRA or FMLA, to meet the notice requirement; however, the employee must state the reason the leave is needed, such as, for example, the expected birth of a child or for medical treatment. The mere mention of 'vacation,' other paid time off, or resignation does not render the notice insufficient, provided the underlying reason for the request is CFRA-qualifying,

---

14    The Commission's implementing regulations address situations in which an employee is unable to provide advance notice to an employer of his or her need for CFRA leave.

and the employee communicates that reason to the employer. *The employer should inquire further of the employee if necessary to determine whether the employee is requesting CFRA leave and to obtain necessary information concerning the leave* (i.e., commencement date, expected duration, and other permissible information)." (Cal. Code Regs., tit. 2, § 11091, subd. (a)(1), italics added.)

This provision appears to presume the existence of circumstances in which an employee is able to provide an employer with notice of the need for leave. Indeed, the regulation permits employers to "require that employees provide at least 30 days' advance notice before CFRA leave is to begin *if the need for the leave is foreseeable* based on an expected birth, placement for adoption or foster care, or planned medical treatment for a serious health condition of the employee or a family member." (Cal. Code Regs., tit. 2, § 11091, subd. (a)(2), italics added.) However, the regulations provide that this 30-day general rule is inapplicable when the need for medical leave is not foreseeable: "If 30 days' notice is not practicable, such as because of a lack of knowledge of approximately when leave will be required to begin, *a change in circumstances*, or a medical emergency, *notice must be given as soon as practicable*." (Cal. Code Regs., tit. 2, § 11091, subd. (a)(3), italics added.) Further, "[a]n employer shall not deny a CFRA leave, the need for which is an emergency or is otherwise unforeseeable, on the basis that the employee did not provide advance notice of the need for the leave, *so long as the employee provided notice to the employer as soon as practicable*." (Cal. Code Regs., tit. 2, § 11091, subd. (a)(4), italics added.)

21

In response to a request for leave for a CFRA-protected purpose, CFRA permits an employer to request "certification" from an employee who seeks to take CFRA protected leave for his or her own medical care. In this regard, CFRA provides:

> "(k)(1) An employer may require that an employee's request for leave because of the employee's own serious health condition be supported by a certification issued by his or her health care provider. That certification shall be sufficient if it includes all of the following:
>
> "(A) The date on which the serious health condition commenced.
>
> "(B) The probable duration of the condition.
>
> "(C) A statement that, due to the serious health condition, the employee is unable to perform the function of his or her position.
>
> "(2) The employer may require that the employee obtain subsequent recertification regarding the employee's serious health condition on a reasonable basis, in accordance with the procedure provided in paragraph (1), if additional leave is required."
> (§ 12945.2, subd. (k)(1) & (2).)

If an employer has doubts regarding the validity of the employee's proffered certification, CFRA establishes a specific procedure that the employer must utilize before the employer may reject the employee's request for CFRA leave:

> "(k) . . . [¶] . . . [¶] (3)(A) In any case in which the employer has reason to doubt the validity of the certification provided pursuant to this section, the employer may require, at the employer's expense, that the employee obtain the opinion of a second health care provider, designated or approved by the employer, concerning any information certified under paragraph (1).
>
> "(B) The health care provider designated or approved under subparagraph (A) shall not be employed on a regular basis by the employer.

22

"(C) In any case in which the second opinion described in subparagraph (A) differs from the opinion in the original certification, the employer may require, at the employer's expense, that the employee obtain the opinion of a third health care provider, designated or approved jointly by the employer and the employee, concerning the information certified under paragraph (1).

"(D) The opinion of the third health care provider concerning the information certified under paragraph (1) shall be considered to be final and shall be binding on the employer and the employee." (§ 12945.2, subd. (k)(3).)

The Commission's implementing regulations provide further detail regarding how CFRA is to be carried out in the workplace. For example, the regulations define "certification" for purposes of CFRA:

"(a) 'Certification' means a written communication from the health care provider of the child, parent, spouse, or employee with a serious health condition to the employer of the employee requesting a family care leave to care for the employee's child, parent or spouse, or a medical leave for the employee's own serious health condition.

"[¶] . . . [¶]

"(2) For medical leave for the employee's own serious health condition, this certification need not, but may, at the employee's option, identify the serious health condition involved. Any certification shall contain the information identified in Government Code section 12945.2, as is demonstrated in section 11097 of these regulations. For purposes of the certification 'unable to perform the function of his or her position' means that an employee is unable to perform any one or more of the essential functions of his or her position. The certification shall contain:

"(A) The date, if known, on which the serious health condition commenced,

"(B) The probable duration of the condition, and

23

"(C) A statement that, due to the serious health condition, the employee is unable to work at all or is unable to perform any one or more of the essential functions of his or her position."  (Cal. Code Regs., tit. 2, § 11087, subd. (a)(2).)

The implementing regulations further detail that an employer "may require that the employee provide any certification within no less than 15 calendar days of the employer's request for such certification, unless it is not practicable for the employee to do so despite the employee's good faith efforts. *This means that, in some cases, the leave may begin before the employer receives the certification*.  Absent extenuating circumstances (e.g., unavailability of healthcare provider), if the employee fails to timely return the certification, the employer may deny CFRA protections for the leave following the expiration of the 15-day time period until a sufficient certification is provided. *The same rules apply to recertification.*  If the employee never produces the certification or recertification, the leave is not CFRA leave.  At the time the employer requests certification, the employer also must advise the employee of the anticipated consequences of his or her failure to provide adequate certification."  (Cal. Code Regs., tit. 2, § 11091, subd. (b)(3), italics added.)

When viewed as a whole, it is clear that CFRA and its implementing regulations envision a scheme in which employees are provided reasonable time within which to request leave for a qualifying purpose, and to provide the supporting certification to demonstrate that the requested leave was, in fact, for a qualifying purpose, particularly when the need for leave is not foreseeable or when circumstances have changed subsequent to an initial request for leave.

24

Given this legal framework, it is not surprising that the question "[w]hether notice is sufficient under CFRA is a question of fact." (*Avila v. Continental Airlines, Inc*. (2008) 165 Cal.App.4th 1237, 1255.)

> b. *The evidence is capable of supporting a finding that Bareno sufficiently requested leave for a CFRA-qualifying purpose*

SDCCD asserts that Bareno was absent on Monday, March 4, 2013, without "prior notice" from Bareno, and that it is undisputed that she "did not call in nor respond to inquiries for the remainder of that work-week." Thus, SDCCD asserts, "Bareno did not exercise her right to request CFRA leave." SDCCD's recitation of the "facts" when it makes these assertions, however, requires one to ignore certain evidence in the record and also requires that one view other facts in the record in the light most favorable to SDCCD, rather than Bareno. In considering SCDDC's motion for summary judgment, however, the court is required to view the record in the light most favorable to Bareno, not SDCCD. As we explain, a review of the record in the light most favorable to Bareno reveals evidence that would support a finding in favor of Bareno on the question whether she made a reasonable request for leave for a CFRA-qualifying purpose.

It is undisputed that Bareno originally notified SDCCD of her need for CFRA-qualifying leave on Monday, February 25, 2013. On that day, Bareno called Ornelas and told her that she would not be at work because she needed to seek medical attention. Bareno indicated that she was sick, depressed, stressed, and had to go to the hospital. Later that evening, Bareno also e-mailed Ornelas to inform her that she

25

would be out on medical leave at least through March 1, 2013. On February 27, Bareno provided SDCCD with a document from her health provider at Kaiser Permanente in which the provider certified that Bareno was "placed off work" by the provider for the period from February 25 to March 1, 2013. SDCCD apparently concedes that Bareno notified it of her need for this medical leave, and there is no evidence in the record that SDCCD ever challenged the propriety of the medical certification that Bareno submitted for this period of time. Nor is there evidence that SDCCD sought to employ the procedure set forth in CFRA to seek a second opinion regarding Bareno's need for medical leave.

There is also evidence in the record that on March 1, Bareno e-mailed Ornelas a second document from her health provider, indicating her need for leave from work between March 1 and March 8, 2013. This document identified the Kaiser Permanente provider, indicated the onset of Bareno's condition as "2/25/2013," and stated, "Off Work. [¶] This patient is placed off work from 3/1/2013 through 3/8/2013." (Underscore omitted.) This document, titled a "Work Status Report," is virtually identical to the document that Bareno submitted to Ornelas on February 27, which the College apparently accepted as sufficient certification of Bareno's need for medical leave for the period from February 25 to March 1, 2013.

SDCCD makes much of the evidence in the record regarding Ornelas's contention that she did not receive Bareno's e-mail, but this evidence does not entitle SDCCD to judgment. CFRA and its implementing regulations clearly contain a reasonableness component with respect to an employee's request for personal medical

26

leave. Thus, even if a fact-finder were to determine that Bareno's March 1, 2013 e-mail was sent, but did not *arrive* in Ornelas's inbox, this would not settle the question whether this fact should be used as a basis to conclude that Bareno's request was not reasonable, given all of the circumstances of her multiple communications with SDCCD, or whether SDCCD was justified in rejecting Bareno's later attempts to rectify the situation by providing copies of the medical certification that she had attempted to provide to Ornelas in that March 1, 2013 e-mail.

Further, at the time Bareno sent the March 1 e-mail to Ornelas, Bareno had already placed SDCCD on notice that she was receiving medical treatment that required her to take leave from work. Again, SDCCD knew that Bareno was out for a medical reason the entire week of February 25 through March 1, 2013, and there is no dispute that Bareno sent an e-mail to Buckley on Friday, March 1, 2013, which he received, in which Bareno indicated that she was "out on a . . . medical leave" and would "notify all concern[ed] of [her] return." Despite this indication that Bareno was seeking *additional leave*, beyond March 1, 2013, for a CFRA-qualifying reason, SDCCD did not contact Bareno about the apparent lack of recertification for that time period. In fact, the evidence demonstrates that SDCCD intentionally did not engage with Bareno.[15] However, a reasonable fact-finder could conclude, based on SDCCD's

---

15     SDCCD asserts in briefing that Bareno did "no[t] respond to inquiries for the remainder of that work-week [i.e., the week of March 4 through March 8, 2013]," seemingly suggesting that Bareno failed to respond to *inquiries made to her from SDCCD*. The record does not support such an inference. The record includes a single reference to a potentially work-related telephone call made to Bareno during that

conduct, that it did not fulfill its obligations under CFRA, which places on employers an obligation to inquire with an employee if its requires additional information from that employee regarding the employee's request for leave. (See Cal. Code Regs., tit. 2, § 11091, subd. (a)(1) ["The employer should inquire further of the employee if necessary to determine whether the employee is requesting CFRA leave and to obtain necessary information concerning the leave"].)

In addition, the CFRA regulations require that employers permit an employee *up to 15 days to provide necessary certification* when the employer has requested that the employee provide certification to support his or her request for leave for a CFRA-qualifying purpose. (See Cal. Code Regs., tit. 2, § 11091, subd. (b)(3) [where employer requires certification, such certification may be required "within no less than 15 calendar days of the employer's request for such certification"].) The regulations thus expressly contemplate that an employee may be out on CFRA protected leave *prior to* providing medical certification regarding that leave. (Cal. Code Regs., tit. 2, § 11091, subd. (b)(3) ["This means that, in some cases, the leave may begin before the

week. Specifically, Bareno testified at her deposition that during that week she received a call "from one of [her] coworkers, but [she] just could not discuss anything," and so she "did not speak to anybody." According to Bareno, her coworker, who was also an administrative assistant, left a message saying that she was " 'checking up on [Bareno].' " Again, there is nothing in this record to indicate that the coworker who called to " 'check[ ] up on' " Bareno was actually inquiring with Bareno about whether she was seeking leave for a CFRA-qualifying purpose or indicated to Bareno that she would have to provide certification of her need for the leave. SDCCD presented no evidence on summary judgment that during the relevant week, March 4 through March 8, 2013, anyone from SDCCD attempted to contact Bareno to inquire about her medical status or need for additional leave, or that anyone informed her that SDCCD had not received medical certification and that Bareno would have to submit certification as soon as possible.

28

employer receives the certification"].)  It is clear that SDCCD was aware that CFRA-protected leave may be taken even when an employee has not yet provided his or her certification, given that Peter Alvino notified others at SDCCD that although Bareno's "leave [was] only approved through March 1st," Bareno could "request from her physician an extension from March 4th and forward."

It is undisputed that Bareno was in contact with SDCCD after the week during which SDCCD contends she was absent without request for leave, and she provided multiple other medical certifications for this period of time.  Yet, SDCCD never informed Bareno, in response to her later communications, that it believed it had not received certification for the week of March 4 through March 8, 2013.  Instead, SDCCD waited until the end of that week to send Bareno a letter via certified mail, addressed to a post office box, informing her of its position that she had been absent without justification and that it therefore considered her to have voluntarily resigned.

Based on all of the evidence, a reasonable fact-finder could conclude that Bareno's attempts to contact SDCCD about her need for leave for a CFRA-qualifying purpose were reasonable, and that she therefore sufficiently "requested" CFRA leave for the entire period during which she was absent in early 2013.  A reasonable fact-finder could also conclude that SDCCD was on notice that Bareno was absent from work between March 1 through March 8, 2013 due to a need for medical leave—i.e., for a CFRA-protected reason.  Given this record, the fact that Ornelas states that she did not receive one of many e-mails sent by Bareno regarding an on-going and

29

changing need for medical leave is simply insufficient to support summary judgment

in favor of SDCCD on Bareno's CFRA retaliation claim.[16]

---

16     Curiously, SDCCD argues that there is "no 'mailbox rule' for emails because email is not as reliable as the U.S. Post Office," and urges that we should therefore infer that Bareno's e-mail "went into the 'junk' file or that Bareno did not send the email correctly." SDCCD cites no authority for its contention that Bareno may not rely on evidence that she sent the March 1 e-mail to Ornelas as support for her claim that she took CFRA-protected leave, and instead, that we should view the evidence in the record as suggesting that Bareno should be held responsible for any failures in communication. It would appear from the record that SDCCD's employees utilized e-mail as a regular method of communication for many purposes. SDCCD's suggestion that the fact that Bareno attempted contact by e-mail, as opposed to some other form of communication, should be held against Bareno ignores the fact that the court is to resolve any evidentiary doubts or ambiguities in plaintiff's favor in the context of a defendant's motion for summary judgment.

    Further, the evidence that SDCCD offered by way of Ornelas's declaration that she did not receive Bareno's March 1 e-mail is not dispositive. In fact, at most, the declaration establishes that disputed factual issues continue to exist on this record. For example, one could reach any number of conclusions as to what happened with respect to Bareno's March 1 e-mail to Ornelas. It is possible that Bareno's e-mail was screened out and for that reason, did not arrive in Ornelas's inbox. Or, the e-mail may have arrived in Ornelas's inbox, but Ornelas overlooked the message. It is also possible that Ornelas did receive the e-mail but falsely claimed that she did not receive it. Given that we do not make credibility determinations on summary judgment, but instead view the evidence in the light most favorable to the nonmoving party, we must acknowledge that the evidence, when viewed in the light most favorable to Bareno, could support a finding that Ornelas did receive Bareno's March 1, 2014 e-mail in her work account. Thus, even if a fact-finder were to conclude that Bareno's mere sending of the March 1 e-mail, without confirming that it was received, did not, in itself, amount to a reasonable request for leave under CFRA for the period between March 4 and March 8, a fact-finder could nevertheless conclude that Bareno sent the e-mail, and that the e-mail was received by its intended recipient, such that any failure in communication was due to an error on *Bareno's employer's part*, and should not be attributed to Bareno.

c. *The evidence is capable of supporting a finding that Bareno submitted sufficient medical certification to support her need for CFRA-qualifying leave*

SDCCD contends that, even if one presumes that Bareno's March 1 e-mail to Ornelas was sufficient to provide notice to SDCCD regardless of whether Ornelas received it or not, Bareno still could not establish a prima facie case of retaliation because the Kaiser Permanente "Work Status Report" that she provided as certification of the need for CFRA-qualifying leave was "inadequate." Specifically, SDCCD contends that the "Work Status Report" "did not contain the required information to qualify as a reasonable request under the CFRA."[17] We disagree with SDCCD's contention.

Again, CFRA establishes that a certification issued by an employee's health provider is sufficient if it includes "[t]he date on which the serious health condition commenced"; "[t]he probable duration of the condition"; and "[a] statement that, due to the serious health condition, the employee is unable to perform the function of his or her position." (§ 12945.2, subd. (k)(1) & (2).)

The "Work Status Report" that Bareno submitted for the relevant time period was issued by Dr. Evan George Tzakis on what appears to be a form regularly used by

---

[17] The trial court apparently agreed with SDCCD's contention, determining that SDCCD was entitled to summary judgment on Bareno's CFRA retaliation claim because, the court concluded, a " 'reasonable request' " for CFRA medical leave "requires [medical] certification" by a medical provider that meets the requirements set forth in California Code of Regulations, title 2, section 11088, and the "evidence submitted regarding Plaintiff's leave from March 4-8, 2013" was insufficient to permit Bareno to "establish[ ] a prima facie case of retaliation."

31

Kaiser Permanente for the purposes of informing employers that employees need time off from work or altered work arrangements due to medical necessity. The form provides that the onset of Bareno's condition that is the subject of the certification was "2/25/2013," thereby clearly indicating the date on which the serious health condition commenced. Further, the form states, "Off Work. [¶] This patient is placed off work from 3/1/2013 through 3/8/2013." (Underscore omitted.) In doing so, the form provides both the probable duration of Bareno's condition, as well as an indication to the employer that the doctor believes that a leave of absence from work is necessary. In other words, the clear intention of this document is to inform the Bareno's employer that she cannot fulfill the functions of her job and needs the identified time off in order to address a serious medical condition. The information provided on the standardized Kaiser Permanente form is sufficient to meet the standards set forth by CFRA.[18]

Although SDCCD argued in the trial court and now argues on appeal that this standardized form is insufficient to meet CFRA's standards, *SDCCD apparently accepted a virtually identical form from Bareno as sufficient to certify the leave she took between February 28 and March 1, 2013.* In other words, one could readily conclude from this record that SDCCD believed that an identical or similar form was

_____

[18]    In briefing, SDCCD also suggests that the "releases [Bareno] sent are incomplete because they did not identify the condition [requiring medical leave]." It is clear, however, that an employee need not share his or her medical condition with the employer, and a certification need not include such information to be considered sufficient: "For medical leave for the employee's own serious health condition, this certification *need not*, but may, at the employee's option, identify the serious health condition involved." (Cal. Code Regs., tit. 2, § 11087, subd. (a)(2), italics added.)

sufficient to support Bareno's claim for the CFRA-qualifying leave for the week prior to the week in question. At no point did SDCCD ever indicate to Bareno that any of the forms she had previously submitted did not meet the legal standard for a "certification" under CFRA. Yet on appeal, SDCCD questions the legal adequacy of a substantially similar form with respect to Bareno's absences from work between Monday, March 4 and Friday, March 8, 2013.

It is clear, however, that the regulations impose on the employer an obligation to request from the employee additional information if it believes that such information is necessary (Cal. Code Regs., tit. 2, § 11091, subd. (a)(1)), and CFRA provides for a specific process by which SDCCD could have determined whether Bareno's leave was in fact needed for a CFRA-qualifying reason if it had reason to doubt the validity of any of the medical certification forms that Bareno ultimately submitted (§ 12945.2, subd. (k)(3)). If SDCCD did not believe that Bareno's medical certification was sufficient, it could have requested additional information from her; CFRA envisions exactly this kind of give-and-take between an employer and an employee. SDCCD did not at any point indicate to Bareno that it viewed her documentation to be insufficient or seek additional information from her.

Given this record, SDCCD is not entitled to summary judgment on the ground that the medical documentation that Bareno provided to SDCCD was inadequate, as a matter of law, to constitute the exercise of a right to CFRA-qualifying leave.

33

2. *There remain material facts in dispute regarding the fourth element of Bareno's prima facie case—i.e., whether the she suffered an adverse employment action because she exercised her right to take CFRA-qualifying leave.*

SDCCD argues on appeal that Bareno's CFRA retaliation claim fails because the undisputed evidence demonstrates that she cannot satisfy the fourth element of her claim.  According to SDCCD, Bareno cannot show that she suffered an adverse employment action because she exercised her right to take CFRA leave.  (See *Faust*, *supra*, 150 Cal.App.4th at p. 885.)  SDCCD contends that "[t]he true but-for cause of the termination was that [SDCCD] thought she had abandoned her job."  However, the record does not establish this as a matter of law.

Although the evidence indicates that Bareno's superiors had been unhappy with her for some time, the decision to consider her as having "voluntarily resigned," which was effectively a termination, took place only after she sought medical leave, and virtually immediately thereafter.  There is a close temporal connection between Bareno's absence for medical reasons and her effective termination by way of SDCCD's interpretation of her absences as a "voluntary resignation," despite her continued communications with SDCCD employees and her attempts to provide the necessary medical certifications for all of the time for which she was absent.  "When an adverse employment action 'follows hard on the heels of protected activity, the

timing often is strongly suggestive of retaliation.' " (*Collazo v. Bristol-Myers Squibb Mfg., Inc.* (1st Cir. 2010) 617 F.3d 39, 50.)[19]

>    3.   *SDCCD's proffer of a nonretaliatory reason for termination does not entitle it to judgment as a matter of law*

Finally, SDCCD argues that it "did not believe, nor have good reason to believe, that Bareno's absence from March 4 through March 8, 2013 was protected," and contends that it reasonably believed that she was voluntarily resigning. SDCCD asserts that Bareno "did not call to ask for leave," that SDCCD did "not receive[ ] the email or doctor's note she claims she sent," that Bareno "had not responded to the telephone message left for her," and that Bareno "had not responded to the certified letter, which warned her that her leave was unauthorized so that she must contact her supervisor within five days or her unauthorized absence would be treated as a voluntary resignation." However, this recitation of the evidence is not complete, nor does it view the evidence in the light most favorable to Bareno. A full review of the record demonstrates that there remain material issues of fact in dispute that should be decided by a trier of fact, not the court.

For example, although there is no evidence that Bareno placed a telephone call to anyone at SDCCD between March 1 and March 8, 2013, there is evidence in the record that Bareno e-mailed multiple individuals at SDCCD, including her direct supervisor, Ornelas, and Vice President Jerry Buckley, on March 1, 2013, in addition

---

[19]     "California courts routinely rely on federal cases interpreting the FMLA when reviewing the CFRA." (*Rogers*, *supra*, 198 Cal.App.4th at p. 487.)

35

to other dates. Although Ornelas states that she did not receive the March 1 e-mail from Bareno regarding her need for additional medical leave, there is clear evidence demonstrating that Bareno did, in fact, send the e-mail to Ornelas's work e-mail account. A fact-finder could conclude that Bareno's sending this e-mail to Ornelas was a reasonable effort to inform her employer of her continued need for CFRA-protected leave, such that it was sufficient notice under CFRA to protect Bareno's absences during the week of March 4 through March 8, regardless of whether Ornelas received the e-mail. A fact-finder could also reach a number of other conclusions with respect to Bareno's March 1 e-mail to Ornelas, none of which would entitle SDCCD to summary judgment on Bareno's CFRA claim. For example, as discussed above, a fact-finder could conclude that the e-mail was screened out before reaching Ornelas's mailbox or that Ornelas did receive the e-mail, but failed to view it or purposely ignored it. Regardless, what is clear from the facts presented on summary judgment is that there can be no certainty on this record that a fact-finder would conclude that Bareno's request for medical leave for the week of March 4 through March 8, 2013, was inadequate as a matter of law, under CFRA's requirements, given the evidence regarding Bareno's communications with SDCCD.

Even more problematic is SDCCD's suggestion that Bareno did not respond to a "telephone message left for her." The clear implication of SDCCD's contention is that SDCCD reached out to Bareno to clarify her need for medical leave and that she ignored SDCCD's attempt to engage with her. As we have previously explained, the evidence that SDCCD relies on for this point is Bareno's deposition testimony; a

36

reasonable inference from Bareno's deposition testimony regarding this telephone call is that this was *not* an official call from SDCCD attempting to glean additional information from Bareno, but rather, that it was a personal telephone call from a coworker calling to check on Bareno. SDCCD's suggestion that Bareno's decision not to return her coworker's call may be viewed as her ignoring a request for information from SDCCD is contrary to the requirement that we view the evidence in the light most favorable to Bareno.

Similarly, SDCCD's reliance on the fact that Bareno "had not responded to the certified letter, which warned her that her leave was unauthorized so that she must contact her supervisor within five days or her unauthorized absence would be treated as a voluntary resignation" as an indication that it did "no[t] have good reason to believe" that Bareno's absences between March 4 and March 8 were CFRA protected is misguided. SDCCD did not place that letter to Bareno in the mail until March 8, so she clearly could not have received it during the week that she was absent. Therefore, her failure to contact her supervisor in response to that letter has no bearing on whether SDCCD had reason to believe, at the time Bareno was absent between March 4 through March 8, that her absences were or were not CFRA protected.

What does have bearing on SDCCD's reason to believe that Bareno's absences between March 4 and March 8 were CFRA protected are all of Bareno's communications with her supervisors both prior to and after those dates. The record is replete with evidence from which a reasonable fact-finder could conclude that SDCCD knew, or reasonably should have known, that Bareno had no intention of voluntarily

37

resigning her position (or being absent without excuse) when she was absent from work between March 4 and March 8, 2013.

Indeed, both immediately before and immediately after the week of March 4 through March 8, 2013, Bareno contacted SDCCD with information regarding her need for medical leave, and provided her original medical certification and additional recertifications regarding her absences. Within a brief time after the relevant absences (and immediately upon learning that SDCCD was claiming that it had not received her original certification for the absences), Bareno informed SDCCD that she had been out for a medical reason and supplied the necessary medical certification. Thus, even if SDCCD had initially understood Bareno to be absent without justification, not long after those absences, it was made aware that she had been out for medical reasons, pursuant to a doctor's order. Nevertheless, even after obtaining this information, SDCCD would not reconsider its original position that her absences were unexcused. Further, it took this position despite the fact that Bareno had arguably provided SDCCD with prior notice of her need for medical leave for the week in question.[20] Although SDCCD took the position that Bareno had "voluntarily resigned" because of her apparent lack of communication during that week, in order to reach this conclusion, SDCCD had to overlook many other communications from Bareno, and had to ignore its own obligations to inquire of Bareno when there was a question about

---

[20]    Again, Bareno had informed Buckley that she was "out on a . . . medical leave," as of March 1, and had indicated to him that her return date was uncertain. There is no suggestion in the record that he did not receive this e-mail message.

38

her need to continue her leave for CFRA-qualifying reasons.  A reasonable fact-finder could conclude, based on this evidence, that SDCCD decided to interpret Bareno's absences as a "voluntary resignation," despite evidence to the contrary, in retaliation for Bareno taking medical leave.

This record does not demonstrate that the evidence is wholly "incapable of supporting a judgment for [Bareno as] the losing party."  (*Faust*, *supra*, 150 Cal.App.4th at p. 877.)  We therefore reverse the judgment and remand the matter to the trial court for further proceedings.

## IV.

## DISPOSITION

The judgment is reversed.  The matter is remanded for further proceedings. Costs are awarded to the appellant.


AARON, J.

WE CONCUR:

O'ROURKE, Acting P. J.

IRION, J.

39