Filed 4/6/21  Alvarez v. City of Delano CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LEONEL ALVAREZ, Plaintiff and Appellant, v. CITY OF DELANO, Defendant and Respondent. | F079331 (Super. Ct. No. BCV-17-101627) **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Stephen D. Schuett, Judge.

Randall Martin Rumph for Plaintiff and Appellant.

Liebert Cassidy Whitmore, Jesse J. Maddox and Michael D. Youril for Defendant and Respondent.

-ooOoo-

Plaintiff appeals from an order granting summary judgment in favor of defendant in an action alleging plaintiff's employment with defendant was terminated in retaliation for comments he made at an employee association meeting concerning a loan transaction between the association and its president, which plaintiff believed violated federal law. Defendant's undisputed evidence demonstrated plaintiff did not make a protected disclosure of information, one of the elements of a prima facie case of violation of the whistleblower statute plaintiff sued under, because (1) his comments were made to the association and its members, not to one of the persons or agencies designated in the statute, and (2) he did not disclose any information, but merely opined, based on facts he learned from the association and its members, that the transaction was illegal. Plaintiff failed to raise a triable issue of fact concerning his alleged disclosure, and the trial court properly granted summary judgment. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2016, plaintiff, Leonel Alvarez, was hired by defendant, City of Delano, as a police officer, subject to a one-year probationary period. At three months and six months, plaintiff received favorable evaluations of his work performance. Within the first week of his employment, plaintiff joined the Delano Police Officers Association (the association).[1] Between December 5 and December 15, 2016, the association held a meeting, which plaintiff attended; prior to the meeting, the association sent its members an email, listing the topics to be covered at the meeting. Among those topics was a loan the association had made to Corporal Jose Madrigal, who at the time of the December 2016 meeting was president of the association; plaintiff understood the loan was for the purchase of a personal vehicle.

---

[1] Plaintiff referred to the association as a union, and it apparently entered into a memorandum of understanding with defendant on behalf of the association members.

Plaintiff testified in his deposition that the association was a tax-exempt organization under 26 United States Code section 501(c)(3), and Internal Revenue Service (IRS) regulations prohibited the use of association funds for personal reasons. The funds belonged to the association members and, when he learned of the Madrigal loan around August or September of 2016, the fact that some of the members did not know of the loan led plaintiff to believe it could be seen as embezzlement and was illegal.

At the December 2016 association meeting, the association treasurer, Sergeant Mario Nunez, initiated a discussion of the loan to Madrigal. Nunez confirmed that the loan had been made, stated it had been repaid,[2] and said it was allowed by the bylaws. A lot of other association members spoke about the loan before plaintiff did.

Plaintiff spoke near the end of the discussion. He stated the loan was outside the legal requirements of the IRS under the 26 United States Code section 501(c)(3) charter that the association worked under. He said the association was not in the business of being a bank or loaning money, and the association's money should be used for the benefit of its members and not for one individual who was not in a needy position, that is, when it was not an emergency. Plaintiff opined that, if it had been an emergency, the association could have made a gift of the funds and it would have been acceptable by IRS standards or regulations, but a loan was not acceptable because the association was not in the business of making loans. About 20 members spoke about the loan at the December 2016 meeting; half or more of those expressed an opinion the loan was improper or illegal. At the end of the meeting, plaintiff felt there were financial transactions that needed an audit to determine whether they were legal or not; the members agreed the association would talk to an attorney and determine whether the loan portion of the bylaws needed to be removed.

---

[2] It was undisputed Madrigal paid the loan back about a week after it was made.

On January 9, 2017, plaintiff's employment was terminated during his probationary period. The decision to terminate his employment was made by Chief Mark DeRosia. Plaintiff subsequently filed the complaint in this action, which alleged a single cause of action for violation of Labor Code section 1102.5,[3] a "whistleblower" statute that protects employees who report conduct believed to be unlawful. The complaint alleged plaintiff's employment with defendant was terminated in retaliation for plaintiff "speaking out about illegal conduct on the part of the [association]" that involved Madrigal. It alleged Madrigal influenced DeRosia's decision to terminate plaintiff's employment.

Defendant moved for summary judgment, asserting plaintiff could not establish the elements of protected activity and causation to prove his cause of action. Defendant also contended it had a legitimate, nonretaliatory reason for plaintiff's termination that defeated plaintiff's claim of retaliation. It contended that, in September 2016, plaintiff and three other officers traveled to Ridgecrest, California, for a Street Interdiction Team (SIT) operation, a multi-agency operation for which they were paid overtime. Subsequently, defendant questioned the amount of time the officers reported on their timesheets for the SIT operation. When questioned, the officers indicated the time recorded included the time they spent stopping for dinner on the way back; they thought they were entitled to a second meal break because they had worked more than 12 hours that day. On December 29, 2016, when he was told the travel time was excessive, plaintiff signed a corrected timesheet. DeRosia declared he terminated plaintiff's probationary employment because plaintiff "did not meet the standard for what I expected from a probationary officer," in that he "falsely reported work time, [and] also refused to correct it despite being unable to justify it when questioned by a superior."

---

[3] All further statutory references are to the Labor Code unless otherwise indicated.

4.

Plaintiff opposed defendant's motion for summary judgment. The trial court granted the motion, and plaintiff appealed from that order.

## DISCUSSION

### I. Appealability

Plaintiff purports to appeal from a judgment entered March 19, 2019, after an order granting summary judgment. The record, however, does not contain a judgment; March 19, 2019 is the filing date of the minute order granting the motion for summary judgment. An order granting summary judgment is not an appealable order. The appeal must be taken from a judgment entered on the basis of the summary judgment order. (*Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 761, fn. 7.) Defendant has not moved to dismiss the appeal. In the interests of justice and to avoid delay, we construe the order granting summary judgment as incorporating an appealable judgment, and the notice of appeal as appealing from that judgment. (*H.N. & Frances C. Berger Foundation v. City of Escondido* (2005) 127 Cal.App.4th 1, 6–7, fn. 5; *Levy*, at pp. 761–762, fn. 7.)

### II. Standard of Review

We review the trial court's grant of a motion for summary judgment de novo, applying the same standards as the trial court. (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925.) The motion must be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment has met its burden if it "has shown that one or more elements of the [plaintiff's] cause of action … cannot be established." (*Id.*, subd. (p)(2).) If the defendant makes this showing, "the burden shifts to the plaintiff … to show that a triable issue of one or more material facts exists as to the cause of action." (*Ibid.*)

We consider all of the evidence the parties offered in connection with the motion, except that which the trial court properly excluded. (*Merrill v. Navegar, Inc.* (2001)

5.

26 Cal.4th 465, 476.)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)  We strictly construe the evidence of the moving party and liberally construe that of the opposing party; we resolve any doubts as to the propriety of granting the motion in favor of the opposing party.  (*Zavala v. Arce*, *supra*, 58 Cal.App.4th at p. 926.)

### III. Analysis of Retaliation Claims

In cases alleging retaliatory employment termination, courts apply the three-step burden-shifting analysis of *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792. (*Bareno v. San Diego Community College Dist.* (2017) 7 Cal.App.5th 546, 560; *Sada v. Robert F. Kennedy Medical Center* (1997) 56 Cal.App.4th 138, 155.)  First, the plaintiff must establish a prima facie case of retaliation by showing (1) the employee engaged in a protected activity, (2) the employer subjected the employee to an adverse employment action, and (3) there was a causal link between the protected activity and the employer's action.  (*Loggins v. Kaiser Permanente Internat.* (2007) 151 Cal.App.4th 1102, 1109.) "If the employee successfully establishes these elements and thereby shows a prima facie case exists, the burden shifts to the employer to provide evidence that there was a legitimate, nonretaliatory reason for the adverse employment action.  [Citation.]  If the employer produces evidence showing a legitimate reason for the adverse employment action, … the burden shifts back to the employee to provide 'substantial responsive evidence' that the employer's proffered reasons were untrue or pretextual."  (*Ibid.*)

In the summary judgment context, an employer/defendant moving for summary judgment has the initial burden.  "If the employer presents admissible evidence either that one or more of plaintiff's prima facie elements is lacking, or that the adverse employment action was based on legitimate, non[retaliatory] factors, the employer will be entitled to summary judgment *unless the plaintiff produces admissible evidence which raises a*

*triable issue of fact material to the defendant's showing*." (*Bareno v. San Diego Community College Dist.*, *supra*, 7 Cal.App.5th at p. 561.) To meet that burden, the plaintiff must produce " 'substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a [retaliatory] *animus*, such that a reasonable trier of fact could conclude that the employer engaged in [unlawful retaliation].' " (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 861.)

## IV.    Plaintiff's Retaliation Claim

Plaintiff's complaint alleged defendant retaliated against him in violation of section 1102.5. That section is a whistleblower statute, which "reflects the broad public policy interest in encouraging workplace whistle-blowers to report unlawful acts without fearing retaliation." (*Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 77.) It provides:

> "(b) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, … if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.
>
> "[¶] … [¶]
>
> "(e) A report made by an employee of a government agency to their employer is a disclosure of information to a government or law enforcement agency pursuant to subdivisions (a) and (b)." (§ 1102.5, subds. (b), (e).)

The complaint alleged that, in mid-December 2016, plaintiff spoke at an association meeting, expressing concerns that the association president, Madrigal, "was committing unlawful acts in the performance of his duties, including utilizing [association] funds for personal use." It alleged Madrigal influenced DeRosia to

7.

terminate plaintiff's employment in retaliation for plaintiff's statements about illegal conduct by the association. Thus, the comments plaintiff made at the association meeting form the basis of plaintiff's claim of retaliatory termination.

### A.     Protected disclosure

The first ground defendant asserted in support of its motion for summary judgment was that plaintiff could not establish a prima facie case of retaliation under section 1102.5 because he could not demonstrate he made a protected disclosure. Section 1102.5 protects the disclosure of a violation of law "to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance." (§ 1102.5, subd. (b).)

Plaintiff's claimed disclosure was not made to "a government or law enforcement agency," including the government agency by which plaintiff was employed. It was made to the association of police officers. The association was not plaintiff's employer, or a government or law enforcement agency. The disclosure also was not made to "a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance." It was made to members of the association and members of the governing board of the association during an association meeting. Those attending the meeting were present as members and board members of the association, not as representatives or employees of defendant, and not as persons with authority over plaintiff as an employee.

Plaintiff also did not make a "disclosure," as that term is used in section 1102.5. In *Mize-Kurzman v. Marin Community College Dist*. (2012) 202 Cal.App.4th 832 (*Mize-Kurzman*), a community college administrator sued her employer, alleging her responsibilities were taken away and she was assigned to a different position in retaliation for complaints she made to her immediate supervisor and to the president of the district concerning actions by the college that the plaintiff believed were illegal. (*Id.* at pp. 839–843.) The plaintiff alleged the actions the college took after her complaints

8.

violated section 1102.5. (*Mize-Kurzman*, at pp. 843–844.) The jury found in favor of defendant, and plaintiff appealed. (*Id*. at p. 844.) She challenged certain of the jury instructions, including an instruction that " '[r]eporting publicly known facts is not a disclosure of information' " under the statute. (*Id*. at pp. 844–845.)

The court found that, because of a dearth of California law on "what constitutes 'disclosing information,' " as that term was used in section 1102.5, the trial court had properly relied on federal law interpreting similar federal whistleblower statutes. (*Mize-Kurzman*, *supra*, 202 Cal.App.4th at pp. 846–849.)[4] The court found the instruction was proper. It was supported by federal cases that held "the report of information that was already known did not constitute a protected disclosure." (*Id*. at p. 858.) The court construed "the term 'disclosure' consistent with its 'ordinarily understood meaning.' [Citation.] '[T]he term "disclosure" means to reveal something that was hidden and not known.' " (*Ibid*.) The court found "no reason to believe the terms [disclosing and discloses] were being used in anything other than their ordinary sense." (*Id*. at pp. 858–859.)

Additionally, the court's interpretation was consistent with "cases holding that the employee's report to the employee's supervisor about the supervisor's own wrongdoing is not a 'disclosure' and is not protected whistleblowing activity, because the employer *already knows* about his or her wrongdoing." (*Mize-Kurzman*, *supra*, 202 Cal.App.4th at p. 859.) "[C]riticism delivered directly to the wrongdoers does not further the purpose of either the federal … or the California whistleblower laws to encourage disclosure of wrongdoing to persons who may be in a position to act to remedy it." (*Ibid*.) The court

---

[4] "Although the language of the federal [Whistleblower Protection Act] describing the conduct protected under that act [citation] and conferring an individual right of action on the employee [citation], is not the same as used in the California statutes, the language and purpose of the statutes are sufficiently close to permit the court to use federal authorities as a guide to interpretation of these California whistleblower protection statutes." (*Mize-Kurzman*, *supra*, 202 Cal.App.4th at pp. 848–849, fns. omitted.)

concluded the trial court "did not err in instructing that reporting publicly known facts is not a disclosure protected by the California whistleblower statutes." (*Ibid*.)

The trial court cited *Mize-Kurzman* in making its ruling on defendant's motion for summary judgment. Plaintiff asserts that case represents outdated law because of a subsequent amendment to section 1102.5. Effective in 2014, after the decision in *Mize-Kurzman*, the Legislature amended section 1102.5, subdivision (b) to protect not only disclosures of information "to a government or law enforcement agency," but also disclosures of information "to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance." (Stats. 2013, ch. 781, § 4.1.) Plaintiff interprets the amendment as extending protection to an employee's report of alleged illegal conduct, made directly to the supervisor who engaged in the wrongdoing. He contends reports of "already known" information are now protected, and only reports of "publicly known" information are outside the statute's protection. We disagree with his interpretation.

*Mize-Kurzman* did not distinguish between "already" known information and "publicly" known information. It discussed a jury instruction that "[r]eporting publicly known facts is not a disclosure of information" for purposes of the statute. (*Mize-Kurzman*, *supra*, 202 Cal.App.4th at pp. 845, 858–859.) The term "publicly known" was the term used by the trial court in its jury instructions, which the appellate court, of necessity, discussed in determining the propriety of the instruction. It concluded, however, that a "report of information that was *already known* did not constitute a protected disclosure." (*Id*. at p. 858, italics added.) Contrary to plaintiff's suggestion, that conclusion was not based solely on the rule that an employee's report to the employee's supervisor about the supervisor's own wrongdoing was not a protected disclosure under the statute. The *Mize-Kurzman* court's conclusion was based on the plain meaning of the term "disclosure" and on federal cases holding that a report of information that was already known was not a protected disclosure. (*Id*. at pp. 858–859.)

10.

The court added that its conclusion was also consistent with the rule excluding protection for reporting wrongdoing directly to the wrongdoing supervisor. (*Id.* at p. 859.)

At the time of the *Mize-Kurzman* decision, section 1102.5, former subdivision (e) provided "that '[a] report made by an employee of a government agency to his or her employer is a disclosure of information to a government or law enforcement agency …' subject to the statute's protections." (*Mize-Kurzman*, *supra*, 202 Cal.App.4th at p. 856; citing Stats. 2013, ch. 781 § 4.1.) The 2014 amendment of section 1102.5 changed subdivision (b) by adding to the description of protected disclosures those made "to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance." (Stats. 2013, ch. 781, § 4.1.) Unlike section 1102.5, subdivision (e), the provision added to section 1102.5, subdivision (b) in 2014 was not limited to government agencies and their employees but would apply to private employers. The amendment clarified the persons within the employer's organization to whom a protected disclosure could be made. It did not address reports made directly to the wrongdoer or to any representative of the employer who already knew of the allegedly illegal conduct. It continued to define the protected behavior using variants of the term "disclose." The amendment did not manifest a legislative intent to expand whistleblower protection to include employee statements concerning allegedly illegal conduct that was already well known to the employer.

In *Hager v. County of Los Angeles* (2014) 228 Cal.App.4th 1538 (*Hager*), the plaintiff alleged his employment as a deputy sheriff had been terminated in retaliation for disclosing information from an informant that a missing deputy sheriff had been murdered and that another deputy might have been involved. (*Id.* at p. 1542.) In March 2000, the assistant sheriff was briefed on the plaintiff's information and ordered the plaintiff not to investigate the deputy's disappearance or wrongdoing by other deputies; he ordered the plaintiff to pass on any information the plaintiff obtained on those subjects to the homicide bureau. (*Id.* at p. 1543.) In September 2000 and again in May 2001, the

11.

plaintiff prepared a summary of the information the task force he worked with had received about the deputy's disappearance. (*Id*. at pp. 1543–1544.) A subsequent investigation of that information, conducted by another officer, discredited the information. (*Id*. at pp. 1544–1545.) After an investigation and hearings, the plaintiff was terminated for violating the order not to investigate the deputy's disappearance and for misrepresenting to his superiors the content of wiretapped conversations. (*Id*. at pp. 1545–1546.)

Relying on *Mize-Kurzman*, the defendant argued the plaintiff did not disclose information under section 1102.5 because other deputies had already reported that information. (*Hager*, *supra*, 228 Cal.App.4th at p. 1548.) The court noted the question was whether the plaintiff had disclosed protected information in March 2000, because anything reported after that date was not " 'blowing the whistle,' " but was reported up the chain of command because the plaintiff was ordered to do so. (*Ibid*.)

The *Hager* court rejected the defendant's argument, based on *Mize-Kurzman*, that only the first employee who disclosed a violation of law was protected from retaliation by section 1102.5. (*Hager*, *supra*, 228 Cal.App.4th at p. 1549.) It noted *Mize-Kurzman* "never considered whether a second employee who disclosed the same unlawful activity … would or would not have been protected" by the statute. (*Hager*, at p. 1549.) The *Hager* court accepted the dictionary definition of " 'disclosure' " that *Mize-Kurzman* relied on, but also considered the language of section 1102.5, subdivision (e), which provided that a " 'report' " by an employee of a government agency to the employing agency was a disclosure of information, as that term was used in section 1102.5, subdivision (b). (*Hager*, at pp. 1549–1550.) "A report does not necessarily reveal something hidden or unknown." (*Id*. at p. 1550.)

The court also concluded limiting the statutory protection to the first report of information would be contrary to the legislative intent behind the statute. "Protection only to the first employee to disclose unlawful acts would defeat the legislative purpose

12.

of protecting workplace whistleblowers, as employees would not come forward to report unlawful conduct for fear that someone else already had done so. The 'first report' rule would discourage whistleblowing." (*Hager*, *supra*, 228 Cal.App.4th at p. 1550.) The court noted "[t]he report of 'publicly known' information or 'already known' information is distinct from a rule in which only the first employee to report or disclose unlawful conduct is entitled to protection from whistleblower retaliation." (*Id*. at p. 1552.)

Thus, at the outset, the *Hager* court recognized that any disclosures or reports of information after March 2000 were not within the statutory protection. By focusing only on disclosures in March 2000, the court implicitly determined that subsequent reports of information were not protected because the basic information was already known to the employer, and anything further was provided at the behest of the employer to update the ongoing investigation.

While the employee's report of allegedly unlawful conduct need not be the "first report" in order to constitute a protected disclosure under section 1102.5, we have found nothing in the cases to support a rule that any subsequent report by another employee of the same information to a government agency, a law enforcement agency, or the employer, is a protected disclosure unless the information is known to the general public. In *Hager*, once the plaintiff and others disclosed the information to the plaintiff's employer in March 2000, it was known to the employing law enforcement agency and to the other law enforcement agencies participating with it in the task force. Further disclosures of the same information were not protected. There was nothing in the case indicating the information was ever known to the general public.

The purpose of section 1102.5 is "to 'encourag[e] workplace whistle-blowers to report unlawful acts without fearing retaliation.' " (*Soukup v. Law Officers of Herbert Hafif* (2006) 39 Cal.4th 260, 287.) Whistleblower protection is important because employees are generally in the best position to observe and report unlawful activities in the workplace. *Hager* rejected an interpretation of section 1102.5 that would protect only

the first employee's report of information regarding a violation of law, because it would discourage employees from coming forward and reporting unlawful conduct out of fear their report would not be the first, and therefore would not be protected.  (*Hager*, *supra*, 228 Cal.App.4th at pp. 1549–1550.)  That rationale would not support protecting every subsequent report of the same information.  There would be no need to encourage disclosure by employees who actually know that the alleged wrongdoing has already been reported or is already generally known by the employer, who is investigating or acting on it.  An employee would have no reason to believe he or she was acting as a whistleblower, or was in need of protection from retaliation, when the employee merely repeated information the employee knew had already been reported, or information the employee had learned from the employer itself.

In this case, as previously discussed, plaintiff's claim of retaliation is not based on a report of information to a government agency, a law enforcement agency, or any representative of his employer.  Even assuming for the sake of argument that a disclosure of information to the association concerning an alleged violation of law by the association or its board could constitute a protected disclosure within the statute, plaintiff's statements at the association meeting were not "disclosures" within the protection of the statute.  Plaintiff had no personal knowledge of the loan transaction. The uncontradicted evidence demonstrated the loan was made in 2015, before plaintiff was employed by defendant or became a member of the association.  Plaintiff testified in deposition that he learned of the association's loan to Madrigal from "a lot of people" and from the association itself, when it sent a notice of the December 2016 meeting and a list of the topics to be covered at the meeting.  The list of topics included the loan from the association to Madrigal.  Plaintiff admitted he did not know for sure the loan had been made until it was confirmed by a board member at the December 2016 association meeting.

Plaintiff presented no evidence showing that he disclosed or reported any facts pertaining to the loan transaction at the meeting. Rather, he claims his protected disclosure was his opinion that the loan transaction was illegal because it did not comply with IRS regulations governing 26 United States Code section 501(c)(3) organizations like the association. *Mize-Kurzman*, however, noted that under the federal whistleblower statute, "where a government employee reports to a wrongdoer that the conduct engaged in by the wrongdoer is unlawful, 'the report would not be a protected disclosure.… [T]he disclosure must pertain to the *underlying conduct*, rather than to the asserted fact of its unlawfulness or impropriety, in order for the disclosure to be protected.' " (*Mize-Kurzman*, *supra*, 202 Cal.App.4th at p. 859, fn. 11; accord, *Lindsey v. Clatskanie People's Utility District* (D.Or. 2015) 140 F.Supp.3d. 1077, 1092–1093 [" 'the disclosure must reveal previously unknown conduct in order to be protected activity; it is insufficient to merely identify or label conduct which is known to have occurred as either unlawful or improper' "].)

When plaintiff spoke at the December 2016 association meeting, he had no reason to believe he was acting as a whistleblower, making a protected disclosure of information to bring to the association's attention facts constituting a violation of state or federal statute. Plaintiff knew the association, its board, and all the members who received notice of the meeting were already aware of the loan transaction. The association's treasurer introduced the subject at the meeting and set out the facts surrounding the loan. He explained there had been a loan to a board member, it had been paid back, and the association's bylaws allowed it. Other members spoke before plaintiff; 10 or more of the 20 who spoke expressed opinions like plaintiff's, that the loan was improper or illegal. Near the end of the discussion, plaintiff stated the loan was outside the requirements of a 26 United States Code section 501(c)(3) organization; because the association was not in the business of making loans, its money should be used for the benefit of the association and not for an individual member, unless it was an emergency. By the end of the

15.

meeting, plaintiff felt there were financial transactions that needed to be audited to determine whether they were legal or not. He understood the association would talk to an attorney and determine whether the bylaws regarding loans needed to be amended.

Plaintiff did not disclose information he believed was not yet known to the association about a transaction he believed violated the law. Rather, he engaged in a discussion with other members of the association about a transaction, the facts of which the association had already disclosed to its members, including plaintiff. The discussion and plaintiff's participation in it did not constitute a disclosure within the statutory protection.

We conclude defendant met its burden of demonstrating plaintiff could not establish the elements of a prima facie case of retaliation under section 1102.5. The undisputed facts demonstrated plaintiff made no disclosure of information to any of the persons or entities specified in the statute. Further, he did not disclose any information regarding the loan transaction. The facts of the transaction were already known by the association, its board, and the members who were present when plaintiff allegedly made his disclosure, and plaintiff was aware that those to whom his comments were made already knew the facts of the transaction, which he simply labeled as illegal. Plaintiff failed to raise a triable issue of material fact regarding the essential element of a protected disclosure of information. As a result, he failed to raise a triable issue of material fact in response to defendant's showing that he could not establish a prima facie case of retaliation in violation of section 1102.5. Consequently, the trial court properly granted defendant's motion for summary judgment.

Because the inability to establish a prima facie case of retaliation is dispositive of plaintiff's claim, we need not address defendant's assertion that it had a legitimate, nonretaliatory reason for terminating plaintiff's employment, or plaintiff's contention that any such reason was pretextual.

16.

## DISPOSITION

The judgment is affirmed.  Defendant is entitled to its costs on appeal.


HILL, P.J.

WE CONCUR:


PEÑA, J.


SNAUFFER, J.