Filed 8/31/21 Vincent v. Dept. of the Cal. Highway Patrol CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| STANLEY VINCENT,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DEPARTMENT OF THE CALIFORNIA HIGHWAY PATROL,<br><br>    Defendant and Appellant. | 2d Civil No. B302026<br>(Super. Ct. No. 16CV05599)<br>(Santa Barbara County) |

Stanley Vincent filed this lawsuit against the State of California (State), claiming that the Department of the California Highway Patrol (CHP) violated the California Family Rights Act (CFRA) and Fair Employment and Housing Act (FEHA) when it terminated his employment. After Vincent prevailed at trial, the State filed motions for judgment notwithstanding the verdict (JNOV) and a new trial. On appeal from the trial court's orders

denying the motions,[1] the State contends: (1) Vincent was not entitled to take CFRA leave, and (2) Vincent's FEHA claims fail because he did not prove retaliatory intent. We affirm.

FACTUAL AND PROCEDURAL HISTORY[2]

*Vincent and his family*

Vincent's immediate family includes his mother, Marie, and sister, Karine.[3] Vincent moved to the United States from Haiti in 1995. Eleven years later he commenced work as a

---

[1] The State also purports to appeal from the trial court's order denying its motion for summary judgment, but such an order is not reviewable where, as here, there was a "full trial covering the same issues." (*California Housing Finance Agency v. Hanover/California Management & Accounting Center, Inc.* (2007) 148 Cal.App.4th 682, 688.)

[2] An appellant's brief must include a "summary of the significant facts." (Cal. Rules of Court, rule 8.204(a)(2)(C).) The State ignores this requirement, omitting numerous facts relevant to this appeal and disregarding "'the precept that all evidence must be viewed most favorably to [Vincent] and in support of the verdict.'" (*Hjelm v. Prometheus Real Estate Group, Inc.* (2016) 3 Cal.App.5th 1155, 1166, alterations omitted.) Instead, "'[w]hat [the State] attempts here is merely to reargue the "facts" as it would have them, an argumentative presentation that not only violates the rules noted above, but also disregards the admonition that it is not to "merely reassert its position at trial." [Citations.]'" (*Ibid.*, alterations omitted.) We cannot abide such a detour from appellate practice. Our duty is to apply the law as it stands to the facts adduced at trial and render a decision that comports with our limited powers on review. Doing so here, we conclude that the State's appeal is "'"doomed to fail."'" (*Ibid.*)

[3] We use the first names of Vincent's family members for clarity.

CHP peace officer.  Over the succeeding eight years, performance reviews showed that Vincent performed "proficient[ly]" or higher in all categories.

Vincent cares for 80-year-old Marie, who lives with him.  He also stands in loco parentis to Karine, who suffers from paranoid schizophrenia.  Karine remains in Haiti, where Vincent created a private health care facility for her in the family home.  Vincent travels there frequently to help with her care.  He maintains regular contact with Karine's treating physician, who considers him his sister's caretaker.

Vincent pays the property taxes on the family home.  He also pays for Karine's food, daily necessities, medical care, and health insurance.  He employs and supervises an in-home caretaker for Karine.  On average, he has sent Karine at least $4,600 per year since 2009, an amount equal to about $65,000 in the United States.  He sent his largest financial contribution—more than $10,000—in 2014.

*Karine goes missing*

On November 9, 2014, Vincent received word that Karine had left the family home and was wandering the streets of Port-au-Prince.  He was also told that local law enforcement required him to make a report in person as Karine's next of kin.  Later that day, Vincent told Sergeant Eric Martinez that he might need an emergency leave of absence.  Vincent had previously taken emergency leave from his CHP duties to care for Karine, once in 2007 when she experienced a medical crisis, and again in 2010 after an earthquake.  CHP did not require him to fill out any forms prior to traveling for these emergencies, nor did it require him to provide any medical certifications for them.

3

Vincent also told Sergeant Martinez that he had been locked out of the CHP computer system and was unable to complete his reports or book drug evidence. He said he would secure the evidence in storage lockers until he regained system access. Sergeant Martinez documented that Vincent would be "holding on to the [locker] key until he return[ed] to work."

The next day, Vincent told Sergeant Brian DeMattia that his sister was missing in Haiti, and requested a two-week leave of absence. Vincent also requested Sergeant DeMattia's assistance in rescheduling a November 13 court appearance. Sergeant DeMattia notified Captain Mark D'Arelli that Vincent needed to "go out of the country to attend family matters." Vincent left the next day, November 11.

On November 12, Sergeant Matthew Dawson called Vincent and left a voicemail message asking him to come into the office and fill out paperwork to determine whether his request met CHP's family leave criteria. Sergeant Dawson also sent Vincent a text message. Vincent responded to neither message.

When Vincent did not show for work on November 14, CHP labeled him absent without leave (AWOL). Sergeant Dawson told Sergeant Russell Regan that Vincent had requested leave, but that the request had not been approved. Later that day, Sergeant Regan left a voicemail for Vincent, sent him a text message, and went to his residence. He received no response. Sergeant Regan tried to reach Vincent again the next day, but could not.

Captain D'Arelli fired Vincent six days later—a decision that was quickly rescinded. He then directed CHP to initiate an investigation into Vincent's "absence without

4

authorized leave." Vincent, who was in Haiti caring for Karine at the time, was unaware of these proceedings.

On November 25, Vincent contacted Lieutenant Mike Bueno from Haiti and requested an additional eight days of emergency leave. Lieutenant Bueno asked no clarifying questions. He did not provide Vincent with any family leave forms, but instead ordered him to return to work "immediately."

*CHP fires Vincent*

When Vincent returned to work on December 4, he submitted documentation about his leave, including: (1) medical records confirming Karine's condition and ongoing medical treatment, (2) police reports showing that Vincent was his sister's next of kin and had initiated a police search to help find her, and (3) financial records demonstrating Vincent's long-standing financial support for Karine. Vincent also explained that he had helped to stabilize Karine's condition by improving the family home, taking her to medical appointments, obtaining her medications, and providing for her daily needs. CHP refused to accept or evaluate the documents.[4] It stripped Vincent of his peace officer duties and assigned him to desk duty.

---

[4] Without citing any evidence in the record, in its opening brief the State claims that Vincent "never provided any information to CHP regarding the nature of his relationship with his sister during his employment." Then, in its reply brief, the State repeats the claim and insists that Vincent withheld information about that relationship from CHP. Such claims ignore that CHP officials refused to accept or evaluate the documents Vincent attempted to give them after he returned from Haiti, as well as the extensive evidence cited in Vincent's respondent's brief detailing his relationship to his sister.

5

Captain D'Arelli thought Vincent was "arrogant" for taking emergency leave, and ordered an investigation into "possible adverse action issues" for being AWOL. Sergeant DeMattia and Sergeant Dawson led the investigation. Captain D'Arelli said that it would "be for termination."

On December 9, Vincent filled out an evidence form for methamphetamine he had seized. He dated the form December 8. When Sergeant Dawson reviewed the form, he asked Vincent whether it was correctly dated. Vincent replied that he thought that it was. Sergeant Dawson later reviewed several of Vincent's evidence bookings and concluded that he had misdated other forms as well. He added a charge of dishonesty and mishandling of evidence.

CHP's investigation substantiated all charges against Vincent, concluding that he had been AWOL, was dishonest and demonstrated a neglect of duty with regard to the submission of reports and processing of evidence, and failed to attend court. The report did not state that Vincent had requested emergency family leave to care for Karine, nor did it include any details about her condition or relationship to Vincent. Investigators presented the report to Commissioner Joseph Farrow and recommended that he terminate Vincent's employment. Commissioner Farrow did so because, "the way it was portrayed," Vincent simply "went AWOL and walked off the job."

*Trial court proceedings*

Vincent sued the State for wrongful termination, alleging violations of the CFRA and FEHA. The State moved for summary judgment, arguing that "[Vincent's] leave did not qualify under the CFRA" because it was "undisputed" that he "did not stand in loco parentis to his sister" because he presented

6

"no evidence that he provided [Karine] day-to-day care or substantial financial support." The trial court denied the State's motion, concluding that there were "triable issues of material fact as to whether [Vincent] stood in the place of a parent." It also rejected the State's arguments that Vincent had provided inadequate notice of his leave, that Karine going missing was not a "qualifying event" under the CFRA, and that CHP had legitimate business reasons to terminate Vincent.

The case proceeded to trial. As to the State's claim that CHP fired Vincent because he was dishonest and mishandled evidence, Evidence Officer Maria Barriga testified that Sergeant Dawson's report was "inaccurate."

As to the State's claim that CHP fired Vincent because he went AWOL, Dr. Paul Berg testified that "Vincent's [family care] responsibilities were significant and complicated and overwhelming," that the "burden" of caring for his sister was "almost exclusively" his, and that Vincent's "dedication was to save the life of his sister." Dr. Berg also testified that Vincent played a significant parental role for Karine. He confirmed that Vincent made several emergency trips to Haiti during his employment with CHP because of the severity of Karine's condition.

Based on its knowledge that Vincent had requested emergency leave to care for his sister, Commissioner Farrow testified that CHP had "a duty" to verify and designate his leave as CFRA leave or to inquire further about the circumstances surrounding his request. Commissioner Farrow also noted that CHP could not avoid its obligations by labeling Vincent AWOL and launching a misconduct investigation.

7

Lieutenant Bueno agreed. He admitted that Vincent qualified for CFRA leave if he was acting as a parent for a mentally ill sister, but he did not complete the required leave evaluation. He also did not direct anyone else to do so.

Sergeant Dawson similarly did not evaluate Vincent's leave request, despite knowing that he cared for Karine.

Captain D'Arelli admitted that he knew that an employee could be in loco parentis to a mentally ill sibling, and could provide certification of emergency leave after it was taken. He nevertheless directed his officers not to ask Vincent any questions about his leave. As a result, no one at CHP evaluated Vincent's leave or provided him with required paperwork.

*Jury verdict and posttrial proceedings*

The jury found in favor of Vincent on all claims. Specifically, the jury found that: (1) Vincent was eligible for family care leave, (2) Vincent requested and took leave for a qualifying person who had a serious health condition, (3) Vincent provided reasonable notice to CHP of his need for leave, (4) CHP refused to grant Vincent's request for leave and/or refused to return Vincent to the same or a comparable job when his leave ended, (5) CHP subjected Vincent to an adverse employment action and discharged him, (6) Vincent's request for and/or taking of leave was a substantial motivating reason for the CHP's decision to discharge him, (7) CHP failed to take all reasonable steps to prevent retaliation against Vincent, and (8) CHP's conduct was a substantial factor in causing harm to Vincent. It awarded him $3.9 million in damages.

The State moved for JNOV and a new trial. In both motions the State argued that substantial evidence did not support the jury's finding that Vincent was in loco parentis to

Karine. The State also argued that CHP legitimately terminated Vincent and that the jury's damages award was swayed by "passion or prejudice." The trial court denied both motions.

## DISCUSSION

### *CFRA claims*

The State contends Vincent was ineligible for CFRA leave because he: (1) did not stand in loco parentis to his sister, (2) did not notify CHP of his in loco parentis claim, and (3) did not provide CHP with the requisite medical certifications. We disagree with all three contentions.[5]

### 1. *In loco parentis*

Subject to certain restrictions not relevant here, the CFRA prohibits an employer from refusing to grant an employee request for family care and medical leave. (Gov. Code,[6] § 12945.2, subd. (a).) An employer is also prohibited from firing an employee who exercises their right to take such leave. (*Id.*, subd. (*l*)(1).) An employee may take family care and medical leave to attend to a serious health condition of an adult dependent, which includes a person to whom they stand in loco parentis. (*Id.*, subd. (c)(1)(B) & (c)(3)(A).) An employee stands in loco parentis if they act "in the place of a parent; instead of a parent; [or are otherwise] charged with a parent's rights, duties,

___

[5] We deny Vincent's request for judicial notice of the CFRA's legislative and regulatory history, filed March 2, 2021, because it is unnecessary to our decision. (*Adams v. Bank of America, N.A.* (2020) 51 Cal.App.5th 666, 674, fn. 4.)

[6] Statutory references are to the Government Code. All references to statutory and regulatory provisions are to those in effect during the events underlying Vincent's CFRA and FEHA claims.

9

and responsibilities." (Cal. Code Regs., tit. 2, § 11087, subd. (c)(1).)

We review the jury's determination that Vincent stood in loco parentis to Karine for substantial evidence. (*Leckie v. Locke* (1949) 90 Cal.App.2d 482, 484-485.) Factors tending to show the existence of such a relationship include that Vincent "possesse[d] [unique] information about" Karine and "assumed the role of a parent on a day-to-day basis for a substantial period of time" (*In re Ashley P.* (1998) 62 Cal.App.4th 23, 27), that he supported her financially and performed household duties for her benefit (*Loomis v. State* (1964) 228 Cal.App.2d 820, 823-824), and that there was a "mutuality and continuity and permanence of the relationship" between the two siblings (*Estate of Teddy* (1963) 214 Cal.App.2d 113, 118). "Above all, the decision depends on the particular individual seeking such status and the unique circumstances of the case." (*In re Ashley P.*, at p. 27.)

The unique circumstances of this case overwhelmingly support the jury's determination that Vincent stood in loco parentis to his sister. The evidence adduced at trial showed that Vincent provided for Karine on a day-to-day basis for nearly two decades. He paid for her housing and other essentials, wiring her money at least once each month. He paid for her medical care, employing and supervising an in-home caretaker. He regularly communicated with her doctors to understand and provide for her specific psychological and medical needs. He took frequent trips to the family home in Haiti to help care for her.

While there in the fall of 2014, Vincent worked with police to locate Karine. And once she had been found, he escorted her to medical visits, filled her prescriptions, and otherwise provided for her daily needs. Such evidence shows a continuous

10

and permanent relationship between Vincent and Karine. Substantial evidence therefore supports the jury's determination that Vincent stood in loco parentis to his sister. (See, e.g., *In re Ashley P.*, *supra*, 62 Cal.App.4th at pp. 27-28.) The State's citation to out-of-jurisdiction cases showing different iterations of people standing in loco parentis and other inapposite cases does not negate this determination.

### 2. Notice

If an employee thinks that they may need to take CFRA leave, they must give their employer "at least verbal notice sufficient to make [it] aware" of the need for such leave, as well as "the anticipated timing and duration of the leave." (Cal. Code Regs., tit. 2, § 11091, subd. (a)(1).) But "[t]he employee need not expressly assert rights under CFRA . . . or even mention [the] CFRA . . . to meet the notice requirement." (*Ibid*.) Rather, it is the employer's duty to "inquire further of the employee if necessary to determine whether the employee is requesting CFRA leave and to obtain necessary information concerning the leave." (*Ibid*.) Then, "based on information provided by the employee," the employer must designate whether the leave qualifies under the CFRA. (*Id*., subd. (a)(1)(A).) If the employer cannot make that designation prior to the employee's leave, it nevertheless cannot refuse to designate it as CFRA-qualifying "so long as the employee provide[s] notice . . . as soon as practicable." (*Id*., subd. (a)(4).) Whether Vincent provided sufficient information to put CHP on notice that he was taking CFRA leave is a question of fact (*Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1255 (*Avila*)) we review for substantial evidence (*Kerr Land & Timber Co. v. Emmerson* (1969) 268 Cal.App.2d 628, 637).

11

Substantial evidence supports the jury's determination that Vincent provided CHP with sufficient notice that he was taking CFRA-qualifying leave. The day he received word that Karine was wandering the streets of Port-au-Prince, Vincent told Sergeant Martinez that he may need to take emergency leave to help locate and care for his mentally ill sister. The next day, he told Sergeant DeMattia about the situation and requested a leave of absence. Sergeant DeMattia, in turn, notified Captain D'Arelli that Vincent needed to "go out of the country to attend family matters." Then, upon his return in December, Vincent provided his superiors with Karine's medical and financial records and a police report documenting her absence from the family home, and explained why his trip to Haiti was necessary. This information was enough to put CHP on notice of Vincent's need for emergency family leave. (*Avila*, *supra*, 165 Cal.App.4th at p. 1258.)

The State counters that Vincent's notice was defective because he did not say that he stood in loco parentis to his sister. But the cases on which the State relies to support this argument are federal cases interpreting federal regulations implementing the federal Family and Medical Leave Act. Under the CFRA, it is the *employer's* duty, not the employee's, to "inquire further . . . if necessary to determine whether the employee is requesting CFRA leave and to obtain necessary information concerning the leave" (Cal. Code Regs., tit. 2, § 11091, subd. (a)(1); see *Avila*, *supra*, 165 Cal.App.4th at pp. 1257-1258; *Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 603-604)—something Commissioner Farrow, Lieutenant Bueno, and others all confirmed that they knew. Despite this knowledge, however, no one at CHP asked Vincent

12

for more information about his relationship with Karine or gave him any CFRA paperwork to fill out. Any lack of notice was thus due to CHP's failures to follow CFRA regulations, not Vincent's. (*Bareno v. San Diego Community College Dist.* (2017) 7 Cal.App.5th 546, 570-571 (*Bareno*) [where employer fails to follow regulations to evaluate employee's leave request, it cannot complain on appeal that it lacked notice thereof].)

### 3. Certification

"As a condition of granting a leave for the serious health condition of [an] employee's child, parent[,] or spouse, [an] employer may require certification of the serious health condition." (Cal. Code Regs., tit. 2, § 11091, subd. (b)(1).) The certification should include the date and probable duration of the family member's condition, an estimate of the amount of time the employee will need to care for the family member, and a statement that the condition "warrants the participation of the employee to provide care" for the family member. (Cal. Code Regs., tit. 2, § 11087, subd. (a)(1)(D).) Conditions that warrant the participation of the employee to provide care include "providing psychological comfort and arranging third party care for the child, parent[,] or spouse, as well as directly providing, or participating in, the medical care." (*Id.*, subd. (a)(1)(D)(1).) If the employee's certification meets the regulatory requirements, "the employer must accept it as sufficient." (Cal. Code Regs., tit. 2, § 11091, subd. (b)(1).) But if the employer has doubts about the proffered certification, it may seek the opinions of additional medical professionals. (§ 12945.2, subd. (k)(3).)

The State again wrongly blames Vincent for CHP's failure to follow CFRA rules. When Lieutenant Bueno spoke with Vincent while he was in Haiti, he asked no questions about

13

Karine and gave him no forms to certify his need for CFRA leave. Nevertheless, upon his return Vincent provided CHP with medical records documenting Karine's condition, and explained his role in providing her medical care. CHP refused to accept or evaluate the records, and instead stripped Vincent of his peace officer duties. The State cannot now complain on appeal that the records CHP refused to accept and evaluate—as it was required to do—were somehow inadequate. (*Bareno*, *supra*, 7 Cal.App.5th at p. 564.) Substantial evidence supports the jury's determination that Vincent proved his CFRA claims.[7]

*FEHA claims*

The State contends Vincent's FEHA claims fail because he did not provide substantial evidence of retaliatory intent. This contention also lacks merit.

"[T]o establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) [they] engaged in a 'protected activity,' (2) the employer subjected [them] to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.) If the employee does so, "the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action." (*Ibid.*) "If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation ""drops out of the picture,"" and the burden shifts back to the employee to prove intentional retaliation." (*Ibid.*) "The employee meets this burden by 'proving, with competent evidence, that the employer's

---

[7] Given our conclusion, the State's contention that it was denied a fair trial due to the purported errors related to Vincent's in loco parentis standing necessarily fails.

14

proffered justification [was a] mere pretext; i.e., that the presumptively valid reason for the employer's action was in fact a coverup.'" (*Nejadian v. County of Los Angeles* (2019) 40 Cal.App.5th 703, 725.) We review for substantial evidence. (*Id.* at p. 726.)

Substantial evidence supports the jury's determination that Vincent met his burden of proving that CHP intentionally retaliated against him for taking protected leave. As to the claim that Vincent was dishonest and mishandled evidence, Officer Barriga said that was "inaccurate." Jurors were permitted to credit her testimony over evidence to the contrary. (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052.)

As to the claim that Vincent went AWOL, the evidence showed that Captain D'Arelli thought Vincent "arrogant" for taking emergency family care leave. He initially terminated Vincent because he was "AWOL"—even though he knew that Vincent "had requested FMLA time off" to travel to Haiti to care for Karine. After rescinding that termination, Captain D'Arelli launched an investigation that, according to his own orders, was "for termination." That investigation substantiated the AWOL claim against Vincent, but failed to mention that Vincent had requested family care leave before departing for Haiti—something multiple CHP officers knew. To Commissioner Farrow, this suggested that Vincent simply walked off the job. Such deliberate concealment supports the jury's determination that CHP possessed a retaliatory intent when it fired Vincent. (Cf. *People v. Avila* (2006) 38 Cal.4th 491, 563 [attempt to conceal shows consciousness of guilt]; see also *Colarossi v. Coty US Inc.* (2002) 97 Cal.App.4th 1142, 1154

15

[adverse action after employee engages in protected activity gives rise to inference of retaliation].)

DISPOSITION

The trial court's orders denying the State's motion for judgment notwithstanding the verdict and its motion for a new trial, both entered October 18, 2019, are affirmed. Vincent shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).) He is also entitled to recover the attorney fees he incurred in conjunction with this appeal in an amount to be determined by the trial court. (§ 12965, subd. (b) [prevailing plaintiff entitled to attorney fees in FRA and FEHA actions]; *Morcos v. Board of Retirement* (1990) 51 Cal.3d 924, 927 [statutes authorizing attorney fees incurred at trial include attorney fees incurred on appeal of those decisions].)

NOT TO BE PUBLISHED.


TANGEMAN, J.


We concur:


GILBERT, P. J.


YEGAN, J.

16

Donna D. Geck, Judge

Superior Court County of Santa Barbara

_____

Rob Bonta, Attorney General, Chris A. Knudsen, Assistant Attorney General, Gary S. Balekjian and Catherine E. Wise, Deputy Attorneys General, for Defendant and Appellant.

Olivier Schreiber & Chao, Monique Olivier; DePaul Law, Michael J. DePaul; Erlich Law Firm and Jason Erlich for Plaintiff and Respondent.

Sharon Terman, Katherine Wutchiett and Rachael Langston for Legal Aid at Work, A Better Balance, The California Employment Lawyers Association, California Women's Law Center, The Center for Law and Social Policy, Disability Rights Advocates, The Disability Rights Legal Center, Equal Rights Advocates, Family Values @ Work, The National Partnership for Women & Families, National Women's Law Center, Public Counsel, and the U.C. Hastings Center for WorkLife Law as Amici Curiae on behalf of Plaintiff and Respondent.