Filed 8/3/23  In re J.R. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re J.R., a Person Coming Under the Juvenile Court Law. | D081803 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. J.N., Defendant and Appellant. | (Super. Ct. No. J520971) |

APPEAL from orders of the Superior Court of San Diego County, Marissa A. Bejarano, Judge.  Conditionally reversed and remanded with directions.

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel and Evangelina Woo, Deputy County Counsel, for Plaintiff and Respondent.

J.N. (Father) appeals from the juvenile court's orders terminating parental rights and directing that his daughter, J.R., be placed for adoption.

(Welf. & Inst. Code, § 366.26.)[1] He contends the juvenile court erred when it found that the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) did not apply because the San Diego County Health and Human Services Agency (Agency) violated its initial duty of inquiry pursuant to section 224.2 by failing to make any inquiry of extended family members. The Agency suggests it had no duty to ask extended family members about J.R.'s potential Indian status because this obligation arises under subdivision (b) of the statute only if the child has been placed into its temporary custody pursuant to section 306. (*In re Robert F.* (2023) 90 Cal.App.5th 492, 497 (*Robert F.*), review granted July 26, 2023, S279743; *In re Ja.O.* (2023) 91 Cal.App.5th 672, 677–679 (*Ja.O.*), review granted July 26, 2023, S280572; see also *In re Adrian L.* (2022) 86 Cal.App.5th 342, 353–374 (*Adrian L.*) (conc. opn. of Kelley, J.); but see *In re Delila D.* (July 21, 2023, E080389) __ Cal.App.5th ___, 2023 WL 4677720 (*Delila D.*).) Alternatively, the Agency contends there was no readily obtainable information from identified family members that was likely to bear meaningfully on whether J.R. was an Indian child. Father responds that the child *was* placed in temporary custody pursuant to section 306 prior to the entry of any court order.

This appeal thus presents several difficult legal and factual issues that in the end we find unnecessary to resolve. Instead, we conclude that under the unique circumstances presented, a conditional reversal is required for the Agency to conduct additional inquiry pursuant to its "affirmative and continuing duty" under section 224.2, subdivision (a).

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

FACTUAL AND PROCEDURAL BACKGROUND[2]

After J.R.'s mother (Mother) passed away in May 2019, J.R. lived with her legal guardian. In January, J.R.'s guardian passed away. J.R. initially lived with her guardian's husband, was then moved to the home of a family friend, and since February 15, 2022, has been living with a nonrelative extended family member (NREFM) under a safety plan. On February 25, 2022, the Agency filed a petition on J.R.'s behalf under section 300, subdivision (b) which alleged that J.R.'s legal guardian died with no successor guardian appointed and the child has no suitable adult willing to assume care because her mother is deceased and the alleged father is unaware of the child's special needs.[3]

The Agency attached the ICWA-010 form to the petition, which stated Father provided no reason to believe J.R. was or might be an Indian child. A client demographic worksheet listed multiple people, including a maternal uncle with an address in Lomita, California and a phone number. The detention report indicated J.N. denied Indian ancestry and Mother did the same prior to her passing in 2019.[4] Father appeared via telephone for the detention hearing and his counsel stated Father "denies any known Native American Indian Ancestry." The juvenile court found ICWA did not apply, ordered Father to complete the " 'Parental Notification of Indian Status' "

---

[2] Because Father's challenge on appeal is limited to ICWA compliance, we limit our recitation of the facts and procedural history to those necessary to determine that issue.

[3] A paternity test later revealed J.N. to be J.R.'s biological father.

[4] The detention report and cover sheet include several ambiguous references causing the parties to dispute whether J.R. was detained by the Agency on an emergency basis prior to the detention hearing.

form and submit it to the social worker, and directed the Agency to investigate whether the child is an Indian child and report to the court.

The Agency's jurisdiction and disposition report indicated that paternal aunt Anna R. informed the social worker "her great-grandfather may have Native American Ancestry. She did not know the name of the tribe, if he resided on a Native American reservation, or had an enrollment/membership card with a federally recognized tribe."[5] However, a later addendum indicated the social worker "spoke to the paternal aunt, Anna R[.] She denied any Native American ancestry, and reported that her family has no tribal affiliation." At the contested adjudication and disposition hearing, paternal aunts Anna R. and Alma N. appeared. County counsel addressed ICWA, stating, "In this case, the father had denied any ancestry at detention. We did follow up with the [paternal] aunt, who indicated they may have ancestry but didn't know the name or whether the great[-]great-grandfather who may have had this ancestry had lived on a reservation or had any enrollment information. [¶] The Agency followed up with the other paternal aunt, who then denied any Native American Ancestry. At this point without the ability to name a tribe or any additional information, this does not rise to a reason to know case. The Agency has conducted inquiry, and at this point we would ask that the Court find that the [ICWA] does not apply." County counsel confirmed that the paternal aunts referenced were the same individuals present in the courtroom. The juvenile court found ICWA did not apply.

---

5    The report also included a chart with the first and last names of 18 individuals who might be relatives of J.R. Two people responded to the Agency's letters and stated they were not related to J.R. The other 16 people did not respond as of the date the report was filed.

At the contested disposition hearing in August 2022, the juvenile court noted Alma N. had not been asked regarding Indian ancestry and inquired of her in court. Alma N. responded she was "[n]ot aware" of any Native American or American Indian ancestry. The juvenile court advised Alma N. that if she obtained any additional information that might change her response, she should provide that information to Father, his attorney, or the Agency. At the request of county counsel, the juvenile court confirmed that ICWA did not apply.

At the contested section 366.26 hearing in March 2023, the paternal aunt Anna R. testified she lived near her sister and her uncles lived approximately 30 minutes away from her. The juvenile court found J.R. to be specifically adoptable and terminated parental rights.

## DISCUSSION

"There is no federal duty to inquire of extended family members." (*In re A.C.* (2021) 65 Cal.App.5th 1060, 1069.) The duty of inquiry for extended family members under state law comes from section 224.2, subdivision (b), which provides that if a child is placed into the temporary custody of a county welfare department pursuant to section 306, there is a duty to inquire of extended relatives about Indian ancestry. There are currently conflicting Court of Appeal decisions interpreting the scope of this initial duty of inquiry. Each of these decisions recognizes that the duty generally turns on whether the child has been "placed into the temporary custody of a county welfare department pursuant to Section 306." (§ 224.2, subd. (b).) But they disagree whether section 306 is applicable when a child is initially detained by a peace

officer pursuant to a warrant or court order and then transferred to the custody of a county welfare department.[6]

Several of the cases focus on the portion of section 306 that permits a social worker to "take" a child into temporary custody 'without a warrant' in emergency situations. (§ 306, subd. (a)(2); see *Ja.O.*, *supra*, 91 Cal.App.5th at p. 678; *Robert F.*, *supra*, 90 Cal.App.5th at pp. 500–501.) They suggest there is a duty to question extended family members only if the child was placed into temporary custody of the county welfare department without a court order. (*Ja.O.*, at pp. 677–678; *Robert F.*, at p. 500.) A more recent case distinguishes the "[r]eceive and maintain" language in subdivision (a)(1) from the "[t]ake and maintain" language in subdivision (a)(2) of section 306, finding that the former applies when custody is initially obtained by means of a warrant and then transferred to the county welfare agency. (*Delila D.*, *supra*, 2023 WL 4677720, at *7.)

---

[6] Section 306 provides, "(a) Any social worker in a county welfare department, or in an Indian tribe that has entered into an agreement pursuant to Section 10553.1 while acting within the scope of his or her regular duties under the direction of the juvenile court and pursuant to subdivision (b) of Section 272, may do all of the following: [¶] "(1) Receive and maintain, pending investigation, temporary custody of a child who is described in Section 300, and who has been delivered by a peace officer. [¶] "(2) Take into and maintain temporary custody of, without a warrant, a child who has been declared a dependent child of the juvenile court under Section 300 or who the social worker has reasonable cause to believe is a person described in subdivision (b) or (g) of Section 300, and the social worker has reasonable cause to believe that the child has an immediate need for medical care or is in immediate danger of physical or sexual abuse or the physical environment poses an immediate threat to the child's health or safety."

We need not take a position on this dispute, which will ultimately be resolved by the Supreme Court.[7]  Even if *Ja.O.* and *Robert F.* are correct and the automatic obligation to inquire of various extended family members pursuant to subdivision (b) of section 224.2 does not apply here,[8] there is a more general and continuing duty of reasonable initial inquiry created by subdivision (a) of section 224.2 that may, in particular case-specific circumstances, require something more than uncritical reliance on a file note reflecting a parent's negative response.  Depending on those circumstances, it sometimes may call for contacting one or more extended family members. (*Adrian L.*, *supra*, 86 Cal.App.5th at p. 371 (conc. opn.); *Robert F.*, *supra*, 90 Cal.App.5th at p. 504; *Ja.O.*, *supra*, 91 Cal.App.5th at p. 681.)  Indeed, "[t]he duty to inquire begins with the initial contact, including, *but not limited to*, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child."  (§ 224.2, subd. (a), italics added.)

"On appeal, we review the juvenile court's ICWA findings for substantial evidence.  [Citations.]  But where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1051.)  There is a split of authority on the standard of prejudice for ICWA inquiry error (see *In re K.H.* (2022) 84

---

[7]    We likewise need not address the parties' factual disagreement, arising from ambiguous record references, concerning whether the child was initially detained by the Agency without a warrant before the detention hearing. (*Ante*, fn. 4.)

[8]    Although the Agency cites and suggests we follow the *Robert F.*, *supra*, 90 Cal.App.5th 492 analysis, in a footnote it expresses a broader concern that the approach in *Robert F.* leads to disparate treatment for children removed pursuant to section 306 compared to those removed by court order.

Cal.App.5th 566, 611–618 [summarizing varied approaches to prejudice review in context of ICWA inquiry or notice error]), and the Supreme Court has granted review on the issue. (See *In re Dezi C.* (2022) 79 Cal.App.5th 769, review granted Sept. 21, 2022, S275578.) This division has adopted the approach articulated in *In re Benjamin M.* (2021) 70 Cal.App.5th 735 (*Benjamin M.*). (*In re Y.M.* (2022) 82 Cal.App.5th 901, 916.) Under this approach, "a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, at p. 744.) This "standard does not require 'proof of an actual outcome (that the parent may actually have Indian heritage).' [Citation.] The missing information need only be relevant to the ICWA inquiry, 'whatever the outcome will be.' " (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 679.)

Because Mother is deceased, the juvenile court was not able to ask her about J.R.'s potential Indian status. (§ 224.2, subd. (c).) The Agency contends *it* satisfied its general duty of inquiry because there is a brief reference in the detention report indicating Mother "denied ICWA prior to her passing" in 2019. No other details were provided.

It is the Agency's responsibility to provide the court with sufficient information so that it can determine whether the requirements of ICWA have been satisfied. (See generally *In re L.S.* (2014) 230 Cal.App.4th 1183, 1198.) And here, context is crucial in deciding how much reliance can be placed on this cryptic reference. Mother's history with the Agency was extensive, involving significant evidence of drug and alcohol abuse as well as a mental health diagnosis. More specifically, in early April 2019 the Agency reported that Mother was "dying of cirrhosis of the liver" and was currently in hospice.

8

She passed away roughly six weeks later. The Agency provides no additional detail as to how long before her death Mother "denied ICWA," nor anything about her physical or mental condition when she answered the question. And despite these uncertainties, the Agency made no additional ICWA inquiry of anyone associated with Mother's side of the family. This included a maternal uncle, for whom the Agency had an address and phone number. It also included Mother's former foster mother, who knew Mother since she was 16 years old and, at Mother's request, became J.R.'s legal guardian after Mother's death. While we appreciate that under *Robert F.* and *Ja.O.*, the obligation of reasonable initial inquiry established by section 224.2, subdivision (a) is flexible and context dependent, we are concerned that even applying this relaxed standard to the unique circumstances of this case, the Agency's inquiry—or at least the documentation of that inquiry—was insufficient.

Moreover, even if the evidence were adequate to permit reliance on Mother's statement without more, the Agency overlooks that under section 224.2, subdivision (a) it had a statutory duty to ask the reporting party whether he or she has any information J.R. may be an Indian child. The record nowhere reflects that this duty was discharged. (See *In re Dominick D.* (2022) 82 Cal.App.5th 560, 567 [failure to inquire of reporting party under section 224.2, subdivision (a), among other errors, required vacation of ICWA finding].)

To decide if this error was prejudicial, we examine the record to determine whether "there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) We conclude such information existed and may still exist. In particular, although the former foster mother is now

9

deceased, the Agency should attempt to question the reporting party and the maternal uncle for whom it had contact information but made no attempt to contact him.

Because the Agency did not fulfill its statutory duty of inquiry under section 224.2, subdivision (a),[9] the juvenile court's finding that ICWA did not apply was not supported by substantial evidence that the Agency conducted an adequate, proper, and diligent inquiry. Its contrary conclusion was therefore an abuse of discretion. Given the importance of expediency and need for finality, we encourage the parties to stipulate to immediate issuance of the remittitur in this case. (Cal. Rules of Court, rule 8.272(c)(1).)

## DISPOSITION

The order terminating parental rights is conditionally reversed and the matter is remanded to the juvenile court with directions that, within 30 days of the remittitur, the Agency must file a report demonstrating its compliance with the initial inquiry provisions of section 224.2, subdivision (a) consistent with this opinion. Within 45 days of the remittitur, the juvenile court must conduct a hearing to determine whether the Agency's investigation satisfied its affirmative

---

[9] Father also claims the Agency's initial inquiry fell short because it knew about the existence of the paternal grandfather and a paternal uncle but made no attempt to ascertain the names or contact information for these potential sources of information, such as asking Father for this information. Based on the Agency's failure of initial inquiry under section 224.2, subdivision (a) it is unnecessary for us to analyze the Agency's alleged inquiry shortcomings regarding these paternal relatives. Nonetheless, nothing in this opinion prevents the Agency from conducting further inquiry of J.R.'s paternal relatives on remand.

10

duty to investigate. The juvenile court has the discretion to adjust these time periods on a showing of good cause.

If neither the Agency nor the juvenile court has reason to believe or to know that J.R. is an Indian child, the order terminating parental rights shall be reinstated by the juvenile court. Alternatively, if after completing the inquiry the Agency or the juvenile court has reason to believe that J.R. is an Indian child, the court shall proceed accordingly.

DATO, J.

WE CONCUR:

McCONNELL, P. J.

KELETY, J.

11